[Civ. No. 23042. Second Dist. Div. Three. May 15, 1959.]

EVA L. GILB, Respondent, v. FRANK A. GILB, Appellant.

Albert G. Bergman for Appellant.

Stanley L. Avery, Jacob W. Silverman and David Daar for Respondent.

SHINN, P. J.—Eva sued Frank for divorce. Frank filed a cross-complaint in which he sought an annulment or, in the alternative, a divorce. After a trial lasting 32 days, the court made findings and entered judgment denying Frank an annulment and awarding each spouse a divorce upon the ground of

mental cruelty. The judgment also contained provisions for the custody and support of the minor daughter, for a division of the community property, and for the payment from community funds of Frank's reasonable expenses in defending an action for attorneys' fees brought by his former attorneys and to enable Eva to pay her costs and attorneys' fees in the present action.

The court tried first the annulment issue and announced its decision; it then tried separately the divorce issues which included the community property issues. Certain of appellant's contentions in his brief related to the community property issues. He furnished a record of the oral proceedings upon the annulment issue but none as to the divorce and community property issues. Upon respondent's application for augmentation of the record the court gave appellant a choice between providing an adequate record or abandoning those points. He failed to provide such a record; he abandoned some of his points and others were stricken from his brief by the court for failure to provide an adequate record with respect thereto.

Although the appeal is from the judgment in its entirety, it is limited by appellant's brief, and the only contentions requiring decision are that appellant should have been granted an annulment on his cross-complaint and that the court erred in provisions of the judgment relating to allocations made to the parties from community funds.

We shall first consider appellant's contention that the court erred in denying him an annulment.

The parties were married in Tijuana, Mexico, on September 2, 1939; they separated in June 1952. Eva had previously been married to Marcus P. Kennedy. The theory of Frank's count for an annulment was that Kennedy was living in September 1939 and that the prior marriage was still in force. (Civ. Code, § 82, subd. 2.) In her answer to the cross-complaint Eva alleged that she obtained a valid decree of divorce from Kennedy in Las Vegas, Nevada, on May 28, 1937, and she alleged as affirmative defenses that appellant had waived his right to contest the Nevada decree, that he was estopped to do so, and that he was guilty of laches. These defenses were pleaded orally in open court and were tried as if they had been pleaded in formal fashion.

The court found: (1) Eva was not a bona fide resident of Nevada at the time of her divorce from Kennedy. (2)

Knowing that Eva went to Nevada for the purpose of divorcing Kennedy and having knowledge of the nature and duration of her sojourn in Nevada, appellant married her in reliance on her divorce and is estopped to attack the Nevada decree. (3) The parties cohabited from 1939 to 1952, working together and cooperating in the acquisition of community property and in the raising of their minor daughter, in reliance upon the validity of their marriage. Pursuant to these findings the court made conclusions of law to the effect that Frank is estopped to attack Eva's Nevada decree, that he is without legal standing to attack it, that he has waived his right to attack it, and that his claim is barred by laches.

In urging that he should have been granted an annulment, appellant argues that the court erred in determining that he was guilty of laches and had no standing to attack the Nevada decree and that the findings of waiver and estoppel are without support in the evidence.

The transcript of the annulment proceedings consists of over 800 pages of testimony and argument. The parties were questioned at inordinate length as to the circumstances of Eva's divorce from Kennedy. The following undisputed facts were developed in the evidence. Eva resided in San Diego, California. She married Kennedy in January 1936 but never lived with him. She met appellant in June 1936. Frank was a "sales engineer" in the laundry and dry cleaning business, traveling a regular route through California, Arizona and Nevada. In March or April 1937, he drove plaintiff to Las Vegas where she initiated divorce proceedings and obtained a divorce from Kennedy on May 28th; she left Nevada a few days later and never returned there to live.

Eva testified that she did not change her residence from California to Nevada solely in order to divorce her former husband. Appellant suggested that she go to Las Vegas; "He knew that I was going to get a divorce and I wanted a complete change of residence and to make a complete, all around change, and it was on his suggestion that I went to Las Vegas, Nevada, to establish my residence." Appellant paid her hotel bill for the first week or 10 days of her stay in Las Vegas. He visited her three or four times and they went out socially; they also corresponded. On his last trip to Las Vegas, Frank brought with him Eva's sister, a Mrs. Dilley. Appellant drove the sisters back to Los Angeles after the entry of the divorce decree.

Mrs. Dilley testified that either on the way to Las Vegas or shortly after their arrival appellant told her that her sister was "there getting a divorce" but she paid no attention to his statement until her sister confirmed it. On the day of the trial, Frank drove the sisters to the courthouse but he did not attend the proceedings. Immediately after the trial respondent packed all her belongings and the three drove away and spent a week together before returning to their homes.

Appellant's testimony was in sharp conflict with that of Mrs. Gilb and her sister. He allowed Eva to accompany him on a business trip to Arizona in October 1936 and at that time she told him she had been married and divorced. When he told her in March or April 1937 that he was going to Las Vegas on his regular business route she asked to come along and he drove her to Las Vegas; the trip took 15 days during which he stopped overnight in various cities to call on customers. Eva did not tell him she was planning to get a divorce in Las Vegas or to change her residence. He left Las Vegas on the third day following their arrival. He did not pay Eva's hotel bill but he stayed in a separate room in the same hotel. He visited her three times while passing through Las Vegas on his regular route. He did not pay the expenses of her divorce. He took Mrs. Dilley with him on his last trip to Nevada at her request; she told him she was going on a vacation. He denied having driven the sisters to the courthouse. He drove the sisters back to Los Angeles at their request. He first learned that Eva had obtained a divorce in Nevada in November or December 1939, when Eva told him that she had gone to Nevada for the sole purpose of divorcing Kennedy and not in order to establish a bona fide residence.

We have concluded that the evidence amply supports the challenged finding that appellant is barred by estoppel from asserting the invalidity of respondent's divorce from her former husband. Since this finding, having support in the evidence, compels an affirmance of the judgment denying Gilb an annulment, we deem it unnecessary to discuss the question of laches and waiver of the right to sue.

The validity of a divorce decree may not be contested by a party who has procured the decree, or a party who has remarried in reliance thereon, or by one who has aided another to procure the decree so that the latter will be free to remarry. (*Estate* of *Coleman*, 132 Cal.App.2d 137 [281 P.2d

567] ; *Dietrich* v. *Dietrich,* 41 Cal.2d 497 [261 P.2d 269].)

█ The testimony of Mrs. Gilb and her sister, if believed by the court, clearly established that appellant knew the purpose of the trip to Nevada and that by paying Eva's hotel expenses and providing transportation for her and her sister, he materially assisted her in obtaining a divorce. Appellant asserts, however, that this testimony was unworthy of belief, and that having rejected Eva's testimony that she intended to become a bona fide residence of Nevada the court should also have rejected her testimony that appellant urged her to go to Nevada and was aware of her divorce plans. We are not persuaded by his argument. Mrs. Gilb's pretense that she intended to establish a residence in Nevada was no doubt influenced by the recollection of what she had sworn to in the Nevada court.

█ Having found facts which proved the invalidity of the Nevada decree, the court had to determine whether appellant had knowledge of those facts at the time he married respondent. Although appellant denied knowledge of the Nevada divorce until after his marriage to respondent, it was for the court to decide whether his activities were merely those of an innocent and obliging friend or of one who was ready and willing to help his future wife to obtain her freedom. We cannot say, as a matter of law, that the court was required to find that at the time of the marriage appellant had no knowledge of the circumstances under which the Nevada decree was procured.

█ We shall next consider appellant's attack upon the provisions of the judgment relating to the payment of attorney's fees and costs of suit.

It was stipulated upon the trial of the cross-action for divorce that all the property of the parties was community property, except for a paid-up policy on the life of appellant which was stipulated to be his separate property.

As we have said, each spouse was awarded a divorce upon the ground of cruelty. The court was required to order an equal division of the community property. (*DeBurgh* v. *DeBurgh,* 39 Cal.2d 858, 874 [250 P.2d 598].) The judgment provided for such a division upon the entry of a final decree, subject to certain adjustments. Among the adjustments mentioned therein were the two items complained of.

Pursuant to a finding that an action was pending against appellant for fees allegedly due his former attorneys, the court found: ''XIV. 1. Defendant has expended for his

own litigation, costs and attorney's fees the total sum of $23,254.94 and Plaintiff has heretofore been allowed by the Court for attorney's fees and litigation expenses the sum of $1,310.00. Plaintiff does not presently have sufficient funds on hand to defray her litigation expenses, including attorney's fees, and an allowance and award shall be made to Plaintiff out of the first moneys realized from the sale of the community property in the sum of $21,944.94, to enable Plaintiff to defray her litigation costs and attorney's fees on an equal basis with the Defendant. Upon the sale of the community property of the parties, said sum of $21,944.94 shall be first paid and delivered to Plaintiff for such purposes and such sums remaining thereafter from the sale of the community property of the parties, after payment of all taxes, involuntary liens or obligations against said property or any part thereof, shall be divided equally between the parties. 2. $500.00 per month is a reasonable amount to be allowed Defendant as salary for continuing the operation of the business as set forth in Paragraph VII of the foregoing Findings. There is now pending in the above Court, another suit against the Defendant entitled Donald O. Krag, et al. vs. Defendant, and the Defendant should be allowed to use community funds to pay only such fees and costs as are reasonably necessary for the defense thereof.'' It was found further: ''Defendant is authorized to pay out of community funds only such attorney fees and costs as are reasonably necessary for the defense of *Krag* v. *Gilb*.'' The judgment conformed to these findings.

Appellant says the judgment gives him no method for ascertaining what payments of costs and attorneys' fees would be ''reasonably necessary'' in defending the action of *Krag* v. *Gilb*. He says in his brief: ''Appellant is thus left to the uncertainty of the specification in the order and the position of lacking information as to what he is or is not permitted to do. He should not be subject to the risk of discovering such certainty, for the first time, by the decision of a court on, or in contempt proceedings.'' The argument is without merit.

As to the other provision, appellant contends that it is ambiguous because it cannot be determined whether it is one for the payment of attorneys' fees from his half of the community or a reduction of the community, half chargeable to Mrs. Gilb and half to himself. He argues that if the former, the order was an abuse of discretion for the reason that the findings upon which it was based are not the equivalent of

findings that respondent was without the actual financial ability to pay her costs of suit and attorneys' fees or that $21,944.94 was an amount reasonably necessary to defray her expenses.

These arguments cannot be maintained.

There is no uncertainty in either provision. The judgment states that the community property will be divided at the time of the entry of a final decree; that certain judgments will have to be made and some property sold; it specifies numerous purposes for which defendant may use community funds and it provides that the court retain jurisdiction to order sales to be made by a referee if the parties do not agree, such sales to be subject to the court's approval; and the net proceeds to be equally divided. Clearly further judicial action would be necessary before a complete division could be made.

If defendant is in doubt as to the amount he may use for the defense of the case of *Krag* v. *Gilb* he may apply to the court for approval of any payment he proposes to make.

 The award to plaintiff of $21,944.94 was not a charge against defendant's share of the community property. It was not an award to plaintiff of that sum for attorney's fees. The community property had been charged with the sum of $23,254 which defendant had expended in his own litigation; he had paid plaintiff $1,310 as attorney's fees, likewise from community funds. The award to plaintiff of $21,944.94, in addition to what she had received was merely one step in the process that would accomplish an equal division of the community property.

There is and could be no objection to the court's deferring the ultimate division of the community property to the time of the final decree with respect to the matters that would call for judicial action in the interim.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.