[Civ. No. 51560. Second Dist., Div. Five. Oct. 10, 1978.]

In re the Marriage of ELLEN and ANTHONY L. BARNERT.
ANTHONY L. BARNERT, Appellant, v.
ELLEN BARNERT, Respondent.

414

## COUNSEL

Richard N. Piantadosi for Appellant.

Lebe & Friedman and Gerald L. Friedman for Respondent.

## OPINION

**STEPHENS, J.**—Petitioner Anthony L. Barnert appeals from all portions of the interlocutory judgment of dissolution of marriage other than the order and judgment dissolving the marriage, custody of the children and visitation rights. Among the issues on appeal are the unequal division of the community property by deducting the encumbrance from the value of the house before awarding the house to the wife, and then awarding the encumbrance to the wife as an obligation to be paid by her; the time and manner of valuation of the medical practice; the amount of child support and which party should be responsible for it, and the award of attorney's fees.

### FACTS

Anthony L. Barnert and Ellen Barnert were married on June 12, 1966, while he was a medical student in New York City. The Barnerts moved to California in 1974, where they purchased a house in Granada Hills. Dr. Barnert worked for a medical corporation in Valencia for five and one-half months. On December 16, 1974, Dr. Barnert started his own practice in Valencia. From October 1974 to May 1975 the Barnerts took out various loans to help them with living expenses and to get Dr. Barnert started with his own practice.

The Barnerts separated on March 15, 1976. They have two children: Andrew, born September 1, 1970, and Deanna, born January 29, 1973. The proceeding for dissolution of marriage went to trial on January 5, 1977.

The items comprising the community property to be divided and their stipulated values are: a house located at 17133 Orozco Street, Granada Hills, California, with a market value of $81,000 and an encumbrance of $55,000; the house furniture, $1,000; the piano, $2,700 with a debt of $1,100; the audio equipment, $1,600; and life insurance cash value $4,350. The life insurance premiums were paid through a program whereby the insured paid only interest for five years, with the premiums due at the end of the five years; therefore, in order to collect the present cash value a debt of $8,246 must be satisfied.

The husband's medical practice was valued at $23,000 by Mr. Krupnick, a certified public accountant who testified at trial as an expert witness for the wife. Mr. Krupnick utilized a formula of 25 percent of gross billings adjusted for profitability of the practice. He looked at records from January 1, 1976 to June 30, 1976. The annualized figure of gross fees and expenses amounted to from $85,000 to $90,000. Since petitioner was earning in excess of 50 percent of gross receipts, Mr. Krupnick concluded that it was a good practice and that it could be valued at 30 percent of the annualized earnings. Mr. Krupnick testified that his margin of error in making evaluations of medical practices was 10 percent. The trial court utilized that margin to adjust the estimate upward by 2.75 percent ($650).

The husband made available to the wife the practice records to the end of December 1976, a few days before the trial.

Husband testified at trial that he valued his practice at $12,000, a figure based on the amount of accounts receivable, $8,000 plus goodwill, $4,000. He also testified that his adjusted gross income in 1976 was $39,110. This amount includes income from his private practice and his salary as consultant in internal medicine at California State at Northridge.

Mrs. Barnert is employed as a registered nurse at Sherman Oaks Community Hospital and has a net income of $419 every two weeks.

The trial court made the following findings of fact pertinent to the issues on appeal:

"2. The community property of the parties is found to be valued at and should be awarded, as follows:

| | "PETITIONER HUSBAND | "RESPONDENT WIFE |
|---|---|---|
| "A. PROPERTY | | |
| "1. Home and lot 17133 Orozco Street, Granada Hills, California | | |
| Valued at $81,000 | | |
| Less encumbrance 55,000 | | |
| net equity $26,000 | | $26,000 |
| "2. Medical practice located at 23861 West McBean Parkway Valencia, California | | |
| valued at $23,650 | $23,650 | |
| "3. Houshold furnishings and appliances situate at said home (excluding piano and audio equipment) | | |
| valued at $ 1,000 | | 1,000 |
| "4. Piano situate at said home | | |
| valued at $ 2,700 | | 2,700 |
| "5. Audio equipment situate at said home | | |
| valued at $ 1,600 | 1,600 | |
| "6. Life insurance cash value | | |
| a. Professonal Econ. insurance policies | | |
| #62761107 $ 1,400 | | |
| #62761108 2,000 | | |
| #62786287 950 | | |
| total value $4,350 | 4,350 | |
| "7. Money in petitioner's professional checking account (to be more specifically identified by petitioner) | | |
| in the sum of $ 100 | 100 | |
| TOTAL | $29,700 | $29,700 |

| | "Petitioner Husband | "Respondent Wife |
|---|---|---|
| "B. Debts and Obligations Charged to Community and Assigned as Follows: | | |
| "1. Family home (First and Second Mortgages) | | $55,000 |
| "2. Piano | | 1,100 |
| "3. Life insurance policies | $ 8,246 | |
| a. Wells Fargo Loan | 14,500 | |
| b. Wells Fargo Note | 3,000 | |
| c. Crocker Account | 4,900 | |
| d. Bank Americard | 1,233 | |
| e. Master Charge | 867 | |
| f. Property tax | 677 | |
| g. Tuition plan | | 1,608 |
| Total | $33,473 | $57,708 |

". . . . . . . . . . . . . . . . . . .

"5. The community medical practice and the division and assignment should be determined by a method which considers, inter alia a percentage of gross billings, the amounts of net earnings, including adjustments for profitability of the practice.

". . . . . . . . . . . . . . . . . . .

"7. Petitioner has the ability to pay child support for each child the sum of $575.00 a month and to pay spousal support to Respondent in the sum of $2.00 per month. Respondent has the ability to provide any other support for said children, including full responsibility for education, housing, clothing and emergency and other medical and dental needs of the children.

". . . . . . . . . . . . . . . . . . .

"9. Counsel for Respondent has provided services in the value of $2,000. for which Petitioner has the ability to pay. Said sum includes the

amount of any prior orders for attorney fees herein and Petitioner is entitled to credit for any sum heretofore paid to said counsel by reason of any order herein for fees. Petitioner has the ability to pay for said fees at the rate of $300.00 on the first day of February, 1977 and at the rate of $100.00 per month thereafter.

"10. STEPHEN KRUPNICK has rendered professional services in connection with this action as A Certified Public Accountant including appearance in court in the reasonable value of $350.00. Petitioner has the ability to pay said sum forthwith."

Among the conclusions of law, the trial court stated: "4. Petitioner shall be ordered to deliver to Respondent a Quit Claim Deed of his interest in the family home and Respondent shall hold Petitioner harmless from any claim, encumbrance, duty or obligation in connection therewith."

## ISSUES

Petitioner husband contends that the trial court erred (1) by not achieving an equal division of the community property in that it deducted the encumbrance from the value of the house before awarding the house to the wife, and then awarding the encumbrance to the wife as an obligation to be paid by her; (2) by not accepting the value of the medical practice as close to trial date as possible; (3) by not using proper standards in valuing the medical practice; (4) by ordering him to pay child support without considering the ability of the wife to contribute to such child support; (5) by ordering him to pay the wife's attorney's and accountant's fees after the division of the community property; and (6) in the amount of child support ordered to be paid by the husband.

## DISCUSSION

### I *Division of Property*

■ According to the mandates of the Family Law Act, enacted by the California Legislature in 1971, the court, upon granting an interlocutory judgment of dissolution of marriage, must divide the community property equally. (Civ. Code, § 4800, subd. (a)). An amendment to section 4800, subdivision (a), effective January 1, 1977, refers to "assets and liabilities" as the community property that must be considered for purposes of accomplishing an equal division.

In order to comply with these rules, the trial court must add all the community assets, deduct all the community obligations and divide the residual assets equally.

Since each asset need not be divided in half, the court is empowered to award different assets to each party, balanced by the award of obligations to each party so that the residual assets are equal. This has been the interpretation of the statutory and case law by the California Supreme Court in the case of *In re the Marriage of Fonstein* (1976) 17 Cal.3d 738 [131 Cal.Rptr. 873, 552 P.2d 1169].

■ The court in *Fonstein* cites the *Eastis* case (*In re the Marriage of Eastis* (1975) 47 Cal.App.3d 459 [120 Cal.Rptr. 861]) for the proposition that although a court is empowered to allocate assets and obligations in different amounts among the parties, this process may not result in an unequal amount of residual assets. However, in the *Eastis* case, the obligations exceeded the assets and the court felt justified in stating in dictum, that the trial court can award obligations to the party in the best position to meet them in the future: "We construe the proper rule to be that if there are no assets to divide, only obligations, or after the equal division of the assets there remain obligations to be disposed of, the court has the discretion to order the payment of such obligations in a manner that is just and equitable, depending upon the respective earning capacities of the spouses and other relevant factors." (*Id.,* at p. 464.)

Respondent wife contends that this dictum in the *Eastis* case should be followed in this case. We do not agree. In the first place, following the rule in *Fonstein,* the equal division of the community property does not consist merely of dividing only the community assets, but of taking into account both the community assets and obligations and dividing equally the residual assets. In the second place, although the rule cited above may have seemed a just result in the *Eastis* case, it must be realized that the community obligations were acquired during the marriage and must be divided at the time of dissolution of the marriage, not equally, but in a manner so as to equalize the residual assets. In the instant case, unlike the *Eastis* case, the assets exceed the obligations. (See *In re Marriage of Smith,* 79 Cal.App.3d 725, 746, fn. 10 [145 Cal.Rptr. 205].)

In the instant case the trial court awarded the net equity of the house to the wife—$26,000 ($81,000 market value minus $55,000 encumbrance) —and ordered the husband to execute a quitclaim deed on the house in favor of the wife. The court then awarded the obligation on the house to the wife, thereby annulling the $55,000 obligation.

In most cases, the courts divide the community assets by using the net value of each item. If an asset is encumbered by a mortgage or a lien, the

party receiving that asset has received, for computation purposes, the value of the asset minus the lien. The same party becomes primarily liable for the lien debt. This debt ceases to play a part in the further considerations of the court. The trial court here used the net valuation, except for the piano on which $1,100 was owed. The proper division of the community property would have been as follows:

| | HUSBAND | WIFE |
|---|---|---|
| 1. Home and lot | | $26,000 |
| 2. Medical practice | $23,600 | |
| 3. Furnishings | | 1,000 |
| 4. Piano | | 1,600 |
| 5. Audio equipment | 1,600 | |
| 6. Life insurance | 4,300 | |
| | $29,550 | $28,600 |

To equalize division of the community property, husband to pay cash or issue a promissory note to wife for one-half of the difference (or $475).

The court's remaining concern is how to divide the $33,473 in community debts. It should not have added the $55,000 mortgage or the $1,100 piano obligation to this figure.

The case is remanded to the trial court for a redetermination of the division of property in accordance with the mandates of the Family Law Act as stated in this opinion.

II. *Valuation of the medical practice*

Petitioner husband contends that his medical practice should be valued as close to time of trial as possible instead of a date approximately six months prior to trial, as occurred in the instant case.

Husband cites *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432 [119 Cal.Rptr. 590], in support of his contention. In *Imperato* the husband

argued that his business should be valued at the time of separation, since he wanted to keep as his separate property the proportionately tremendous increase in the value of the business. The court did not agree with him. It held that the value of the business should be taken as close to time of trial as reasonably practicable " *'with the reservation however, that since the enactment of Civil Code section 5118, effective March 4, 1972, any portion of the law practice assets including goodwill which are attributable to the earnings and accumulations of a spouse living separate and apart are the separate property of the spouse earning or accumulating the same. . . .'* (Italics added.)" (*Id.,* at p. 436, quoting from *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58].)

The court further held that the apportionment formulas of *Pereira* v. *Pereira* (1909) 156 Cal. 1 [103 P. 488] and *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17 [199 P. 885], must be applied in reverse. That is, once a business is started by one spouse as community property during the marriage, and that spouse continues working at that business after separation, the court must use whichever formula it deems appropriate. If the court chooses the *Pereira* approach, it "would allocate a fair return of the increase to the community property and the excess would be husband's separate property." (45 Cal.App.3d at p. 439.) If the court chooses the *Van Camp* approach, it "would determine the reasonable value of husband's services (less the draws or salary taken) and allocate this additional sum, if any, to husband as his separate property and the balance of the increase to community property." (45 Cal.App.3d at p. 439.)

■ The California Legislature enacted an amendment to Civil Code section 4800, subdivision (a), effective in 1976 which states that ". . . the court shall value the assets and liabilities as near as practicable to the time of trial, except that, upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and prior to trial to accomplish an equal division of the community property and the quasi-community property of the parties in an equitable manner."

The amendment was designed to remedy certain inequities: one is the situation which results when either spouse dissipates the community estate after separation, and another is when the hard work and actions of one spouse *alone* and after separation, greatly increases the "community" estate which then must be divided with the other spouse. The *Imperato* case fits this last situation. However, the relief that this amendment would

afford was taken into consideration by the court in the *Imperato* case when it held that Civil Code section 5118 applies, making the earnings and accumulations of a spouse after separation his separate property and applying the *Van Camp-Pereira* rules in reverse.

In any event, petitioner husband is not contending for the application of the exception to his case. He argues for a valuation date as near to the date of trial as possible because he contends that the medical practice did not go as well during the second half of 1976. *Imperato* would seem to support husband's contention in that *Imperato* considered the fact that if valuation took place at time of separation, "the spouse devoting time to the asset must also stand the loss." (*Id.,* at p. 437.)

However, in the instant case the trial court found that petitioner husband had made an effort to show diminished income from the practice during that period of time and accepted the valuation arrived at by Mr. Krupnick, who took into account records from January 1, 1976, to June 30, 1976. The spouses had separated in March 1976.

█ We reaffirm the holding in *Imperato* that the valuation of an income producing asset which is under the control of a spouse, such as a medical or legal practice, is governed by Civil Code section 5118 which makes any portion of the practice assets attributable to the earnings and accumulations of a spouse while living separate and apart the separate property of that spouse, subject to the application in reverse of the *Van Camp-Pereira* rules.

█ The second aspect of this issue is the method of valuation of the practice. In *In re Marriage of Lopez, supra,* 38 Cal.App.3d 93, the court spelled out certain items that should be taken into consideration in valuing a professional practice, such as tangible assets (office equipment), accounts receivable and payable, and goodwill, which, in and of itself, takes into account future expectations, although in dissolution of marriage the division of the property ends as of the date of trial.

Mr. Krupnick testified that he has valued other medical practices for purposes of sale and that he has used the formula he used in this case, which was 25 percent of gross billings adjusted for profitability of the practice. This formula does not use a "goodwill" factor per se. Petitioner husband contends that his own valuation is the correct one.

The trial court made a determination as to the credibility of the witnesses. It found, as mentioned before, that the husband was trying to show diminished income. This is not an unreasonable inference and the

trial court's finding on the proper method of valuation will not be disturbed.

This portion of the case is remanded for valuation of the medical practice taking into consideration the date of separation and the application of the *Van Camp-Pereira* rules in reverse, in accordance with expressions in this opinion.

### III *Child support*

Petitioner husband contends that the trial court erred when it awarded the child support obligations to him allegedly without considering the ability of the wife to contribute to such support.

Civil Code section 4700 provides that the court may order either or both parents to pay any amount necessary for the support, maintenance and education of the child. This provision may seem inconsistent with the first sentence of Civil Code section 196: "The parent entitled to the custody of a child must give him support and education suitable to his circumstances." However, the second sentence continues as follows: "If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability." This sentence seems to indicate that even if the mother is awarded the custody of the child, the father is still primarily held liable for his support, and only in the event of his inability to support the child must the mother be ordered to assist him.

The court in *Smith* v. *Workmen's Comp. App. Bd.* (1966) 245 Cal.App.2d 292 [53 Cal.Rptr. 816], talked about the confusion caused by Civil Code section 196 and stated: "The rights and obligations defined in this code section are subject to the limitations contained in Civil Code, sections 137.2 and 139 [now §§ 4357, 4700 and 4811] authorizing the court, in custody proceedings, to order either parent to support the child. Where custody of a child is awarded to the mother, the effect of section 196, as between the parents, *absent any decree of court directing otherwise,* is to shift the primary duty to support from the father to the mother, . . . [Citations.]" (Italics added. *Id.,* at p. 298.)

Also stated in *Levy* v. *Levy* (1966) 245 Cal.App.2d 341 at page 358 [53 Cal.Rptr. 790]: "The fact that the father has physical custody of the boy undoubtedly makes him primarily liable for the child's support. Where the mother has custody, the father's liability is generally limited to that

provided in the proceedings under which the mother was given custody. [Citation.]" The court in *Levy* further stated at page 359: "It is concluded that the test under the provisions of section 196 of the Civil Code is not an absolute test dependent upon whether the husband has any resources at all to furnish adequate support for his child, but a relative test in which the legitimate needs of the child must be whittled down or expanded in accordance with resources available from his parents. Their relative contributions in turn must depend on the urgency of the needs of the child and the relative hardship to each parent in contributing to such needs."[1]

Civil Code section 246, as amended in 1976, sets forth a list of factors which the court should consider in determining the amount due for support from each party. Among these factors are those mentioned above in the *Levy* case. A new factor is "(d) The ability of the obligee to engage in gainful employment without interfering with the interests of dependent children in the custody of the obligee."

■ From the foregoing discussion, it is clear that when the mother has the custody of the child, as in the instant case, it is within the discretion of the court to award the obligation of child support to the father according to the resources available to him. However, in setting this amount the court should take into consideration the contribution that the mother can make to the support of the children.

In the instant case, the petitioner husband testified that he had a gross income of approximately $40,000 in 1976. The respondent wife has a net earning of approximately $900 per month or $10,800 per year. The court ordered the husband to pay $575 per month per child ($1,152 per month). The court ordered the wife to assume present responsibility for education, housing, clothing and providing for emergency or other medical or dental needs of the minors. It is not clear from the trial court's finding the source of the money to be used to satisfy the responsibility awarded to the mother. Even if the mother's responsibility is satisfied in part with monies derived from the father, it cannot be said that the trial court erred in awarding the child support obligation to the father that it did in view of the parties' respective earning abilities.

---

[1]For a discussion of the obligation of the respective parents and factors determining the amount of the award of child support, see Goodman, *Rights and Obligations of Child Support* (1975) 7 Sw.U.L.Rev. 36, 42-55.

The wife will receive $2 monthly for spousal support, as per court order. She was awarded the obligation on the house, which amounts to approximately $500 a month, and the children's school tuition. It is unreasonable that she could contribute much toward the feeding and clothing of the children and herself out of the remaining $400 a month, or less, from her paycheck.

█ The second aspect of this issue of child support is whether the trial court erred in the amount of child support to be paid by petitioner husband. Petitioner contends that the amount is excessive in view of what he earns.

As stated before the court in *Levy* v. *Levy, supra,* 245 Cal.App.2d 341, held that there must be a comparison between the needs of the child and the ability of the parent to pay. Walzer, California Marital Termination Settlements (Cont.Ed.Bar 1971) section 5.5, at page 154, states: "But regardless of the need for support, the amount required of a husband who is earning according to his capabilities rarely exceeds 50 per cent of his take-home pay. [Citations.]"

In *In re the Marriage of Ames* (1976) 59 Cal.App.3d 234 [130 Cal.Rptr. 435], the amount of income that was taken into consideration in determining whether the award of child support was reasonable was the after-taxes net income. In the instant case the petitioner husband testified that he made $40,000 a year pretax but after expenses. In his objections to the court's findings of fact, he stated that he had $19,000 net a year after income taxes and other expenses. Petitioner argued in the trial court that he had a take-home pay of $2,529 per month after taxes, which would amount to $30,348 a year. Clearly, there is a discrepancy in petitioner's figures. Taking the higher figure, and following Walzer's guidelines, $1,152 is not more than 50 percent of his take-home pay, clearly within the range of accepted practice.

█ Moreover, in *In re the Marriage of Reese* (1977) 73 Cal.App.3d 120, 125 [140 Cal.Rptr. 589], citing *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408], it was stated that, in determining the amount of child support, what must be looked at is the ability to earn rather than actual income when it appears from the record that a parent deliberately attempted to avoid financial family responsibility. The trial court in the instant case found that there had been a deliberate attempt by petitioner husband to show diminished income.

This portion of the case is affirmed.

## IV *Attorney's and accountant's fees*

Petitioner husband contends that it was prejudicial error for the court to order him to pay for wife's attorney's and accountant's fees, especially in view of the division of assets and obligations. Since we are remanding the case for a new determination of the division of the community property, husband's argument becomes moot.

■ Husband's real argument is that attorney's fees are community obligations which should be deducted before dividing the community property. This same argument was made by husband in *In re Marriage of Jafeman* (1973) 29 Cal.App.3d 244 [105 Cal.Rptr. 483], and rejected by the court. The court there considered the effect of the enactment of the Family Law Act on prior law which held that "an award of attorney's fees was independent of the division of the community property and was not in derogation of the parties' right, in those cases in which each was granted a divorce, to an equal division of the community property." (*Id.,* at p. 265.) After a discussion of the legislative intent, the court concluded that "the Family Law Act did not effect a change in the previous case law. Such a conclusion seems warranted by the fact that even under the previous sections it was not found that an award of attorney's fees was incompatible with the requirement of equal division of the community property." (*Id.,* at p. 266.) The basis for awarding attorney's fees is that each party must have access to legal representation in order to preserve all of his or her rights.

Husband cites *Wong* v. *Superior Court* (1966) 246 Cal.App.2d 541 [54 Cal.Rptr. 782], for the proposition that since husband's liability for attorney's fees may be deducted as a community obligation prior to the division of the community property, the obligation for the wife's attorney's fees should also be deducted prior to the division of property.

The court in *Jafeman* mentions that in the *Wong* case "it was recognized that the parties, by proper amendment of their pleadings, may request that their liability to their respective attorneys be treated as a community debt. In such a situation it is proper for the court to consider this obligation, just as it would any other community debt which is not in dispute, in determining the amount of community property which is available for distribution." (*Id.,* at pp. 266-267.)

However, in the *Wong* case defendant wife did not raise an issue as to the attorney's fees being an improper charge against the community estate. (*Wong* v. *Superior Court, supra,* 246 Cal.App.2d 541, 547.)

In light of the holding of *Jafeman* (29 Cal.App.3d 244) with respect to attorney's fees, this recognition in the *Wong* case is not to be construed as a rule that must be followed here, but simply a procedure that may be followed by the parties involved. Since the parties in the instant case did not follow this procedure, it was within the power of the trial court to award attorney's fees to be paid by the husband after the division of the community property.

The holding in *Gilb* v. *Gilb* (1959) 170 Cal.App.2d 379 [339 P.2d 176], allowing credit to the other spouse when one spouse satisfies his liability to his own attorney before the division of the community property where equal division is required is not applicable to this case.

The remaining issue is whether the award of attorneys' fees and accountant's fees was reasonable. The court in *Crevolin* v. *Crevolin* (1963) 217 Cal.App.2d 565, 572 [31 Cal.Rptr. 622], stated: "The amount to be allowed as the reasonable value of legal services rendered is a matter within the sound discretion of the trial court, and will not be set aside by a reviewing court unless there has been an abuse of discretion. [Citations.] 'In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered. . . .' [Citing *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 672-673 (169 P.2d 453).]" The award of $350 to Mr. Krupnick for his accounting work and of $2,000 to respondent's counsel is proper in view of all the circumstances of the case.

This portion of the case is affirmed.

The judgment is reversed with directions as to the division of community property and valuation of the business assets; as to all other matters it is affirmed. Each party to bear its own costs.

Kaus, P. J., and Hastings, J., concurred.