Filed 4/2/13  Marriage of Charles CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of ROGER C. CHARLES and DEBORAH C. CHARLES. | |
| ROGER C. CHARLES, Appellant, v. DEBORAH C. CHARLES, Respondent. | G046813 (Super. Ct. No. 06D008136) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James L. Waltz, Judge.  Affirmed.

Patrick L. McCrary for Appellant.

Snell & Wilmer, Richard A. Derevan and Todd E. Lundell for Respondent.

\*          \*          \*

The subtext of this date-of-valuation-of-a-community-business case illustrates a lesson for family law practitioners in how a strategy can backfire.  Often, the spouse who doesn't manage a community business – the "nonoperating" spouse – worries about the dissipation of the business's assets in the period between the date of separation and the date of trial.  Accordingly, it is often the nonoperating spouse who brings a motion to value the business as of the date of separation, not the date of trial.  (See Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2012) ¶ 8:1383, p. 8-330.2.)  By contrast – at least in the typical dissipation scenario – operating spouses have no incentive to value a community business as of the date of separation.  Time is on their side as value slip slides away.

In the present case, in line with the habitude of community businesses to decline in value in the post-separation period, the operating spouse sat back during the *four-year* period between the date of separation and the looming trial date, confident the community share of the business (a two-man design partnership) would be valued at a figure *less* than its value as of the date of separation.  After all, the CPA firm jointly hired to value the business had, in 2009 – about a year and a half before trial in 2011 – valued the community's share at $198,000.  The $198,000 figure was comfortably less than the $226,000 figure at which the same accountants had valued the community share at the 2006 date of separation.

But then the operating spouse got a nasty shock.  In the fall of 2010, the same CPA firm revised its estimate of current value dramatically upwards to $716,000.

The bad news apparently galvanized the operating spouse into action.  He retained new counsel, and the first thing the new lawyer did was to bring a motion under Family Code section 2552, subdivision (b) to value the business as of the date of

separation.[1]  But by that time all discovery had been completed, and the motion itself could not be heard until about a week before trial was to begin.

The motion was, in short, too late.  The trial court denied it as clearly untimely.  The trial court was well within its discretion in doing so, and we accordingly affirm the judgment.

## BACKGROUND

Ironically enough, the fact that drives this appeal does not feature prominently in the briefing.  It is this:  Roger and Deborah Charles separated in May 2006, yet more than five years would pass until trial would begin on August 22, 2011.

The story of those five years can be told briefly.  Roger filed a petition for dissolution on September 12, 2006.  The couple's marital status was dissolved in less than nine months, in May 2007.  About a month after that they jointly retained Duckworth & Mehner, CPA's, as forensic accountants to value their community interest in Genesis Associates, which is an interior design firm half owned by Roger and half owned by Roger's partner Greg Shubin.  In April 2009, Roger had a conversation with Glenn Mehner of Duckworth & Mehner, the gravamen of which was that Genesis Associates was in deep trouble, and was projecting a $100,000 loss for first quarter 2009.  Based on Roger's alarms, the next month Duckworth & Mehner opined the community half of the firm to be worth $198,000, which compared unfavorably with their earlier valuation for the end of 2006 (the date closest to the date of separation) of $226,000.

The $198,000 valuation, however, did not survive.  2009 was a good year for Genesis Associates.  The firm had gross revenues of about $2.4 million, and a profit before officers' compensation of $1.3 million.  Duckworth & Mehner, in a report dated October 22, 2010, valued the community share in Genesis Associates at $716,000.

---

[1]      All further statutory references are to the Family Code unless otherwise stated.  As is common in family law cases, we refer to the parties by their first names.

3

The timing of the revised Duckworth & Mehner report was certainly not convenient for Roger. Just the month prior, on September 29, 2010, Deborah had filed an at-issue memorandum requesting the case be set for trial. Her memorandum checked the box declaring that "all discovery has been completed." The memorandum, in turn, generated a notice of trial setting conference sent out in mid-October, setting November 19, 2010 as the date for a trial setting conference.

Roger found himself new counsel, who substituted into the case on December 2, 2010. The first act of new counsel was to file, six days after substituting in, a motion to value the community's interest in Genesis Associates at the date of separation. But by this time a trial date had been set for mid-February (the exact date is not in the record furnished us by appellant Roger), and the motion could not be heard until February 4, 2011. Deborah's opposition pointed out that motions to value assets of the date of separation must be heard by the time of the trial setting conference,[2] hence the motion was untimely. The trial judge agreed. He was clearly unimpressed by the tardiness motion. Addressing Roger's new counsel, the court began: "We have a trial, days ahead, and you filed a motion for a bifurcated proceeding, arguing date of valuation just short of trial, what is up with that?" Needless to say the motion was soon denied.

Trial was continued a couple of times to August. In the interim, the other shoe dropped on the valuation issue when Deborah filed a motion in limine to preclude Roger from presenting evidence of the value of Genesis Associates at the date of separation. The motion was granted – a logical consequence of the court's denial of Roger's earlier motion. The case was tried in late August 2011.

---

2 Former California Rules of Court, rule 5.175(a) provided, in 2011, that "On noticed motion of a party, the stipulation of the parties, or on its own motion, the court may bifurcate one or more issues to be tried separately before other issues are tried. *The motion must be heard not later than the trial-setting conference.*" (Italics added.)

Effective just this year (January 1, 2013), rule 5.175 (along with its sister rule 5.126 [prescribing the form for application]) were replaced by new rule 5.390. New rule 5.390 contains no language requiring the motion be heard by the trial setting conference.

4

Judge Waltz's statement of decision was extremely thorough and cogent.[3] The court noted the main difference in the valuation of the competing experts[4] was the calculation of goodwill, which in turn depended on how much "'reasonable compensation'" was to be attributed to Roger. Ironically, the higher the reasonable compensation, the lower the goodwill. That is, the more income of the business is attributable to the operating spouse, the less an investor wants to pay to buy the business and replace the operating spouse.

The original jointly retained expert, Glenn Mehner, posited a figure of $875,000 a year for reasonable compensation. By contrast, Roger's expert Warsavsky opined the correct figure was $1.342 million. And Deborah's expert Turk said it was $649,000.

Ultimately, the judge thought Dr. Turk's figure the most persuasive, partly because his credentials were "over-the-top impressive," and mostly because his analysis was based on Risk Management Association studies which provided a better comparison sample of firms in terms of asset size and sales. By contrast, Warsavsky used Economic Research Institute data, which did not provide Warsavsky with any information showing how closely sample data matched his own criteria.

Finding reasonable compensation at $649,000 and applying a multiplier of 2 to gauge risk (the judge noted gross revenues had held steady at no less than $2.3 million a year from 2006 to 2010),[5] the court found a goodwill value of about $1.45 million for the entire firm. When combined with fixed assets of some $190,000 and

---

[3] With plenty of footnotes and asides showing the judge was paying keen attention to the proceedings. (See *Reichert v. State Farm General Insurance Company* (2012) 212 Cal.App.4th 1543, 1545 ["This was no phoned-in minute order."].)
        For example, the court observed in footnote 8 that Roger had ceased paying the Duckworth firm, which itself "substantially interfered with their on-going work."

[4] Deborah employed Chapman University economist Thomas Turk, while Roger had hired CPA Alfred Warsavsky after ceasing to pay Duckworth & Mehner.

[5] A multiplier of 1 represents the highest level of risk; the higher the multiplier the lower the perceived risk.

another $190,000 in owners' equity, the total value of the firm was ascertained at about $1.8 million, which translated into $918,000 as the community interest.

In terms of cash flow for purposes of support, the court fixed Roger's income at $51,530 a month, which pencils out to $618,360 a year. Ironically, the $51,530 figure came directly from Roger's own expert Warsavsky, who recognized the $51,530 per month figure reflected the situation of July 31, 2011, i.e., as close to trial as possible.

Warsavsky, however, had also *projected* a lower figure, $41,612, would prevail for 2011 as a whole. The trial judge rejected that projection. Warsavsky's projection was based on data given him from Genesis Associate's controller, and neither the controller nor Roger's partner were called to corroborate the projection.

## DISCUSSION

A. *Valuation Date*

Roger's main point, framed in two permutations,[6] is that the trial court had *no choice* but to either value Genesis Associates at the date of separation or, if it was going to value it at the date of trial, reduce the value by some factor which would account for the value of Roger's post-separation efforts. (Cf. *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 439 ["Here, we have community property acquired during the marriage, and, if the facts justify apportionment we seek to allocate increases of the community property occurring after separation into separate property."].)

The argument fails because it ignores the standard of review. The applicable standard of review is abuse of discretion, not legal error.

After the *Imperato* decision in 1975, the Legislature amended then Civil Code section 4800 to provide for a basic "shall-may" model for valuation dates of

---

[6] As he frames them in his brief: (1) Whether the trial court "erred" when it denied his motion for a date-of-separation valuation date; and (2) whether the trial court "erred" in determining that Genesis Associates should be valued as of the date of trial without apportionment to account for the value of Roger's post-separation efforts.

community property.  (See *In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 423 ["The California Legislature enacted an amendment to Civil Code section 4800, subdivision (a), effective in 1976 which states that '. . . the court shall value the assets and liabilities as near as practicable at the time of trial, except that, upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and prior to trial to accomplish an equal division of the community property and the quasi-community property of the parties in an equitable manner.'"].)

Under the basic "shall-may" model, it is presumed assets will be valued as of the date of trial – "shall" – but the trial court retains the option – "may" – if there is good cause, of switching to valuation as of the date of separation.  The shall-may language is retained to this day in the text of Family Code section 2552 subdivisions (a) ["shall" value at date of trial] and (b) ["may" value at date of separation].)[7]

That means the standard of review used to evaluate the trial court's decision to deny Roger's motion is abuse of discretion; the key word is "may."  Roger thus errs when he frames his argument in terms of whether the trial court *erred*.  The precise issue before us is whether the trial court *abused its discretion* in refusing to switch the normal default setting of valuation of date of trial to the optional date of separation.  In other words, the dispositive question, like all questions tested under an abuse of discretion standard, was whether the trial court acted *reasonably*.  (See *In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 374 ["An abuse of discretion is only demonstrated when no reasonable judge could have made the challenged order."].)

---

[7] Here is the text of both subdivisions:
"(a) For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except as provided in subdivision (b), the court *shall* value the assets and liabilities as near as practicable to the time of trial.
"(b) Upon 30 days' notice by the moving party to the other party, the court for good cause shown *may* value all or any portion of the assets and liabilities at a date after separation and before trial to accomplish an equal division of the community estate of the parties in an equitable manner."  (Italics added.)

And of course by that standard it is an easy call. Roger brought his motion too late, at a point when discovery had already been completed, and when considerable discovery would have been necessary to test the issue of a date of separation valuation. Prejudice to Deborah alone, even if the motion was not formally untimely, made the decision to deny eminently reasonable. As Deborah's respondent's brief notes, at the very least Deborah would have needed a court order to *re*depose Roger, and she would have needed to take the depositions of Roger's partner Greg Shubin and 10 or more other employees of Genesis Associates who might be somewhat less inclined to ascribe the entirety of the business's recent success just to Roger's efforts. And that doesn't include the extra work the forensic accountants would need to do to reconstruct the business environment in which Genesis Associates operated five years earlier in May 2006.

The trial judge's decision can also be justified independently by the need to deter operating spouses from gamesmanship in the control of community businesses. Roger was content to let more than four years go by (from May 2006 to December 2010) without making a motion to value at the date of separation. The trial judge could reasonably infer that if Roger was serious about his contention Genesis Associates was fundamentally a two-man show (or maybe even a one-man show[8]), he could easily have brought his motion to value as of the date of separation sometime in 2007, or 2008, or maybe even 2009. The earlier he might have done so, the more credible his assertion that the post-2006 Genesis Associates success was entirely the product of his separate efforts. In effect, he would have said to the court, at a date early enough to mean it, "Hey, I'm willing to take responsibility for the growth in value of Genesis Associates, and to prove it, I'll accept the value as of the date of separation, which can't be manipulated by what I

---

[8] Roger didn't help his case by having a glowing website which emphasizes the institutional stability of Genesis Associates (as distinct from the company simply being a manifestation of his own artistic vision). The trial judge himself asked several questions about the website, and Roger had to back off from some of the statements on it. E.g., "Q. [by the court]: Your point is, a lot of information on this website is not accurate. [¶] A. [by Roger] Boy, is that true. . . . [¶] Q. You can understand and appreciate that I look at it as representing you, your credentials and how you hold your company out to the public. [¶] A. As well you should."

do now." By waiting so long, Roger only confirmed what is pretty obvious from this record, namely, that he thought the value of Genesis Associates would *decline* from its date of separation value.

The trial court thus did not abuse its discretion in denying Roger's motion and likewise did not abuse its discretion in granting Deborah's in limine motion, which was only the logical outcome of the earlier denial.

B. *Other Issues*

Roger presents three other arguments of an evidentiary character:

1. *Warsavsky's Projection*

First, Roger complains that the court "improperly discounted" Warsavsky's projection that 2011 would not be as good a year as it had been up to July 31 – because the projection was not directly corroborated by testimony from either the company's controller or Roger's business partner. Roger's theory is that since Evidence Code section 801 allows an expert to testify to hearsay made available to him prior to the hearing, somehow it was error not to blindly accept Warsavsky's opinion.

This argument fails because the trial court was merely *comparing* among experts, deciding who was the most credible and whose methodology the most reliable. The court was not *excluding* Warsavsky's opinion because of some supposed lack of in-court corroboration. The statement of decision is very clear the court allowed Warsavsky's opinions into evidence, but simply found Turk's figures more compelling. That was a perfectly reasonable choice given that Warsavsky's figure was based on projections, not actual data, and therefore cried out for more backup. (See Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."].) Indeed, it has long been established that triers of fact choose which of several experts is the more persuasive. (*Liberty Mut. Ins. Co. v. Industrial Acc. Com.* (1948) 33 Cal.2d 89, 94 ["The trier of fact may accept the evidence

9

of any one expert or choose a figure between them based on all of the evidence."]; *Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 139 ["The trial court decides the credibility of experts."].)

### 2. *Turk's Supposedly Outdated Data*

Next, Roger raises the argument the trial court *necessarily* had to reject Turk's valuation because Turk supposedly relied on "outdated data." The "outdated data" to which he refers is the fact that Genesis Associates had an extraordinarily good year in 2010, but (at least according to Roger) experienced reduced income in 2011.[9] Roger goes so far as to assert that because Turk did not *exclude* data from 2010 (but did exclude data from 2011), there was a lack of substantial evidence for Turk's valuation figure.

This argument fails, as it applies to the year 2010, because both Turk and Mehner averaged income for the years 2006 through and including 2010, obtaining a properly representative longitudinal sample. (See *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1082 ["the time period on which income is calculated must be long enough to be *representative*, as distinct from *extraordinary*"]; *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 820 [commending averaging over representative period of time].)

And the argument fails as it applies to the year 2011, because the trial judge was reasonable to rely on experts who did not take 2011 into consideration. Most obviously, trial took place in August 2011, in the middle of the third quarter, so any decline in 2011 would at best been a projection from data gathered in the first two quarters. The year was still subject to manipulation and uncertainty. On top of that, the trial judge could properly be skeptical of any such projection given Roger's track record. The judge heard testimony from which he could draw the conclusion that Roger in fact

_____

[9] The statement of decision itself notes that 2010 gross revenue was $3.675 million when the figures for 2006 to 2009 all ranged from a low of $2.326 million (in 2006) to $2.618 million (in 2008).

misled expert Mehner about the company's health in 2009.  The sky was falling in the first quarter of 2009, or so Roger told Mehner.  If Roger could play Chicken Little in 2009, he could revisit the role in 2011.

And in any event, given the need for long-term averaging, any arguable error in not according to 2011 the status of somehow representing a "new normal" was harmless.  The projection for 2011 was actually in line with some of Genesis Associates' better years.[10]

### 3. *Roger's Monthly Income*

The final argument raised by Roger involves the projection for the balance of 2011.  Roger argues Warsavsky's projection of reduced income for 2011 *had* to be determinative.  We have already dealt with this point above, noting that the trial court was reasonable to prefer hard historical data to the chimera of projection.

Moreover, any arguable error is both invited and harmless.  It is invited because the $51,530 per month figure came from *Warsavsky's* own opinion of Roger's cash flow as of July 31, 2011, which was as close to the date of trial as possible.  It is harmless because the $51,530 a month figure arrived at by the court works out to *less than half* of what Roger's own expert Warsavsky testified was Roger's reasonable compensation of $1.343 million for purposes of good will.  Had the trial court decided Roger should be paid what his own expert Warsavsky thought he was worth to the company in terms of reasonable compensation, his income for support purposes would be more than twice what the trial court determined.  As another panel of this court aptly put it in *Barth, supra,* 210 Cal.App.4th at page 365, "'be careful what you wish for.'"  In this case, Roger is lucky he didn't get it, or he really would have something to complain about by way of greatly increased child and spousal support orders.  As it was, he got off easy:

---

[10]    In point of fact, the statement of decision noted that the projection from the first two quarters of 2011 would have yielded a gross of $2.571 million for the year, which was higher and 2006, 2007, and 2009, but a tad lower than 2008 ($2.618 million).

11

The amount of income fixed by the trial court was even lower than the lowest ($649,000) reasonable compensation figure proffered by any of the experts.

DISPOSITION

The judgment is affirmed.  Deborah will recover her costs on appeal.

BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.