[Civ. No. 17402. Third Dist. Sept. 26, 1979.]

In re the Marriage of CAROLYN O. and WALTER B. STALLCUP.
CAROLYN O. STALLCUP, Respondent, v.
WALTER B. STALLCUP, Appellant.

■■■■■■■■■

**COUNSEL**

Diepenbrock, Wulff, Plant & Hannegan, John V. Diepenbrock, David A. Riegels and Daniel E. Hall for Appellant.

Dexter R. Jacobson for Respondent.

**OPINION**

**PARAS, J.**—Walter Stallcup (hereinafter husband) appeals from a judgment dividing community property and awarding child and spousal support to his former wife Carolyn (hereinafter wife). The couple married

in Oklahoma on August 18, 1962, moved to California in 1963, and separated on February 5, 1972. Husband was on active duty in the Air Force from 1961 to 1966 and was a major in the Air Force Reserve at the time of trial. In 1966 the couple purchased a Taco Bell franchise in Sacramento; this was the first of a series of acquisitions and transactions which were the focus of the 14-day trial on property division. In 1972, when the couple separated, they had ownership interests in three Sacramento restaurants, a Taco Bell franchise in La Jolla, bank accounts, securities, real estate, automobiles and life insurance.

Wife's petition for dissolution of the marriage was filed on January 22, 1973. An interlocutory judgment of dissolution was entered on September 26, 1973. The court awarded temporary child support and custody of the couple's two children (then ages five and seven) to wife, appointed a certified public accountant (CPA) to prepare a financial report on the community property, ordered the parties to turn over all necessary documents and records to the CPA, and reserved jurisdiction to later determine the property division, spousal support, and attorney's fees and costs. A final dissolution judgment was entered on November 12, 1975.

In April 1975, wife posed a set of 92 interrogatories to husband regarding business transactions. They were answered only after wife's motion to compel answers was granted on June 25, 1975.

On September 26, 1975, the CPA wrote to the presiding judge to inform the court that there was an outstanding balance of fees due him and that the preliminary financial report would be delayed both for such lack of payment and for lack of response to his requests for financial documentation.[1]

On November 18, 1975, in anticipation of wife's request to the court to compel payment of his fees, the CPA again wrote to the court. His letter included 23 numbered paragraphs, posing questions regarding apparent inconsistencies in husband's interrogatory answers and requesting documentation on various notes, loans, bank accounts and business transactions. On December 12, 1975, the court ordered payment of the CPA's (and some attorney) fees, and further ordered the parties to provide the CPA with tax returns, answer the questions posed in the CPA's November 18 letter, and deliver to him papers, documents, and records as per the interlocutory judgment. On January 19, 1976, the court ordered

---

[1]It was never disputed between the parties that husband had assumed the major decision-making role in the couple's business activities and possessed the relevant records.

compliance with its December 12, 1975, order within 30 days. On February 15, 1977, no responses to the November 18, 1975, letter had yet been received by the CPA.[2] On February 25, 1977, the court again ordered compliance with its previous orders and on May 6, 1977, finding that husband had willfully refused discovery and disobeyed such orders, ordered him precluded from introducing evidence of specified transactions at trial.

Trial was had June 13 through July 1, 1977, before a judge not involved in the preliminary orders. Some of the evidence offered by husband was excluded pursuant to the May 6 order and the trial judge's own determination of lack of discovery, and the court granted wife's timely motion to value the community property as of March 31, 1972, shortly after the separation. (Civ. Code, § 4800, subd. (a).) The judgment awarded wife $125 per month spousal support, $325 per month (per child) child support, $91,510 as her share of the community property, and $48,715.65 as restitution from husband for 50 percent of a community property fund the court found he had deliberately misappropriated. Husband was ordered to transfer cash assets of $29,455 to wife forthwith, to pay $110,770 to her in specified installments with 10 percent interest on the unpaid balance, to pledge the outstanding stock of his Idaho corporation and add a subordinated pledge of California corporation stock to secure the installment payment obligation, to carry term life insurance of $100,000 for the benefit of the children until their marriage, majority or emancipation, to indemnify wife against liability on community obligations, and to pay $10,000 to wife's attorneys forthwith. The court reserved jurisdiction to make further orders with respect to contingent military retirement benefits and social security benefits should they later be determined to be divisible upon dissolution.

On appeal, husband contends the court abused its discretion in excluding evidence he presented at trial and in the award of spousal support. He also claims error in the valuation date of community assets, the misappropriation finding, the interest rate of 10 percent on the installment award, and the retention of jurisdiction to divide contingent retirement benefits.[3]

[2]Husband finally attempted to deliver written answers to the accountant's questions when the accountant was deposed on May 24, 1977, 19 days before trial. The accountant refused to accept the answers because there would not be time to prepare a new report before trial, no documentation was included, and the material was undated and unsworn.

[3]The last argument appears in appellant's closing brief for the first time; husband relies on *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802], decided after

I

■ Husband's first claim is that the court abused its discretion by excluding (1) a 1969 stock purchase agreement between husband and his former partner exchanging shares and cash which husband contends shows he paid his partner $41,790.35, thus diminishing 1972 community cash assets by that amount, (2) written answers to the CPA's November 18, 1975, questions which assertedly show that husband had expended substantial cash amounts on previous transactions (including an investment which later became worthless), and (3) husband's testimony as to the above. His complaint is that the absence of this information prejudiced him by allowing an erroneous cash receipt item of $60,000 in the CPA's report to go unchallenged.

Husband admits the cash receipt item was the subject of an interrogatory, an inquiry by the CPA and the May 6 exclusion order. His argument here is the same one he advanced in the trial court when he moved to vacate the exclusion order, i.e., he supplied answers to the CPA's questions to his trial attorney in both January and April of 1976 and the answers were misplaced in the attorney's office. His trial attorney (since replaced) testified that the two sets of answers had been received in his office and that through inadvertence, responses to only three of the questions had been typed and filed.

Husband urges us to hold that *he* did not refuse to make discovery,[4] the fault was his attorney's and should not be imputed to him. The argument begs the question. The fact is that despite repeated court orders to deliver documents and financial records, beginning with the interlocutory judgment in September 1973 and continuing until a month before trial in 1977, husband never supplied meaningful documentation of the couple's financial situation to the court-appointed accountant. In such circumstances, we find no abuse of discretion in the sanctions imposed. (See *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270 [105 Cal.Rptr. 276].)

his opening brief was filed in November 1978 and contends there is good cause to set aside the usual rule of nonconsideration of points so raised. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 442, p. 4405.)

[4]Husband may not so readily avoid his own responsibility for failure to supply the required information. By January 1976 when he admittedly furnished the information for the first time, he had already disobeyed at least two court orders on the subject.

## II

█ Husband's second argument, that the trial court erred in valuing the community assets at a date near separation instead of a date near trial, also fails because of his refusal to deliver relevant materials. Civil Code section 4800, subdivision (a), allows valuation as of a date after separation for good cause, to accomplish an equal division in an equitable manner. The 1972 date was established in order to simplify the accounting and to eliminate the inference that the failure to provide discovery was calculated to conceal evidence unfavorable to husband. The court also noted inconsistencies in husband's testimony, bank loan applications, and deposition statements regarding the nature of current assets and liabilities and concluded he was not a credible witness. We find both good cause and equitable division in these circumstances, to justify and support the court's decision. Having failed to provide timely evidence of his claimed post-1973 business reverses, husband may not now benefit from the confusion thus created and we will not further consider his contentions of business losses.[5]

## III

█ Husband next complains of a lack of substantial evidence to support the trial court's finding that he failed to account properly for a bank account containing $97,431.33 and deliberately misappropriated that sum. The account was maintained in the name of GABO, Inc., a community property corporation organized to operate a Taco Bell franchise in La Jolla. Husband testified the account was moved in early 1973 from Roseville, where both he and his manager could write checks on it, to La Jolla, where only the manager could write them. He testified that all receipts from the operation of the Taco Bell were deposited into the La Jolla account and all expenses paid from it. Husband also testified he had not written a single check on the account since early 1973. Confronted with a March 1973 check, signed by him and payable to himself, for $12,000, husband modified his testimony to indicate the $12,000 check was the last one written or that he may have paid some taxes or trade bills from the account later. Confronted with bank statements from March 20, 1974, through May 30, 1975, on the same account, husband testified the numerous transactions shown therein represented paper exchanges adjusting draws against the business with salary accounts. The amount of deposits plus the March 29, 1974,

---

[5]Our conclusion makes it unnecessary to consider husband's request for judicial notice of a suit apparently filed against him in 1977.

beginning balance totalled $97,431.33. We conclude there was sufficient evidence of deliberate misappropriation of this amount in husband's inconsistent and deducibly false testimony.

■ Husband also argues that even if we sustain the misappropriation finding, the award of one-half the fund as restitution to wife allows her a double recovery. He reasons that since the CPA arrived at the $53,000 1972 value of the corporation (which the trial court accepted) by using a formula based on a trend analysis of sales and gross profits, the value is directly tied to anticipated future profits and the award of half the 1972 value plus half the $97,431.33 fund is a double recovery. This reasoning is pure choplogic. There is no double recovery. Had husband disclosed the existence and value of the fund to the CPA, the value of the corporation would have been increased by that amount and equal division would have accomplished exactly the same result as that arrived at by the judgment.

## IV

■ Husband next claims the court abused its discretion in ordering him to pay $125 per month in spousal support until all amounts set forth in the judgment as wife's share of the community property are paid. We find no abuse. At the trial, wife testified that her living expenses exceeded her income by approximately $200 per month. Given husband's history of disobedience to court orders, it was entirely reasonable and within its discretion for the trial court to provide for support until wife receives all her share of the community property.

## V

■ Husband's claim of error in the 10 percent interest figure assigned by the court to the unpaid balance on installments due to wife is also without merit. Marital property dispositions are not limited by the judgment interest rate of 7 percent, but are controlled by the dictates of fairness and equity in Civil Code section 4800. (Cf. *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927 [134 Cal.Rptr. 161].) Should husband elect to pay the judgment in full immediately, the 10 percent figure will be irrelevant as there are no penalties prescribed for early payments. In these times the 10 percent figure is not an unfair recompense to wife for husband's interim use of the principal sum due.

## VI

 Husband's final contention is that the United States Supreme Court's opinion in *Hisquierdo* v. *Hisquierdo, supra,* 439 U.S. 572 [59 L.Ed.2d 1], requires reversal of that portion of the judgment which retains jurisdiction in the trial court to make further orders with respect to any military pension and retirement rights earned by husband. We disagree. *Hisquierdo* does not address military retirement benefits, it deals only with benefits under the Railroad Retirement Act of 1974. While the overruled California Supreme Court's *Hisquierdo* opinion relied in part on *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den., 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41] (*Hisquierdo, supra,* 439 U.S. at p. 580, fn. 14 [59 L.Ed.2d at p. 10], neither the United States Supreme Court nor the California court has actually overruled *Fithian.* The *Fithian* holding that federal military retirement pay is community property and divisible is still the law of California at this time. Should it change, the trial court may rule accordingly; meanwhile, wife's rights are properly protected.

The judgment is affirmed.

Puglia, P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied October 22, 1979, and the opinion was modified to read as printed above.