[Civ. No. 50086. First Dist., Div. Three. May 28, 1982.]

In re the Marriage of NANCY GARDNER and REID PRIDDIS.
NANCY GARDNER PRIDDIS, Appellant, v.
REID PRIDDIS, Appellant.

COUNSEL

Lorin B. Blum, Eileen Preville, Blum, Kay & Merkle and Blum, Kay, Merkle & Kauftheil for Appellant Wife.

Ronald A. Wagner, Peter W. Davis, Jacqueline M. Jauregui and Crosby, Heafey, Roach & May for Appellant Husband.

OPINION

SCOTT, J.—Nancy Priddis appeals from that portion of an interlocutory judgment of dissolution characterizing property as separate or community and dividing community property; Reid Priddis has cross-appealed. The trial court valued the couple's assets and liabilities as of the date of their separation, which occurred over 11 years prior to the dissolution proceedings. The principal question is whether that valuation date was set for good cause and accomplished an equal division of the property in an equitable manner. (See Civ. Code, § 4800, subd. (a).)

## The Facts

Nancy and Reid were married in 1957. In December 1967 they separated. Nancy moved to an apartment; Reid remained in the Kensington home which the couple had purchased not long after their marriage. In 1968, Reid's parents moved in with him. About 10 years later, Nancy filed a petition for dissolution; trial was held in February 1979.

At the time of their separation, the couple had debts of over $35,000, including a mortgage of about $13,000 on their residence. During their lengthy separation, Nancy was employed as a teacher. Reid was sporadically self-employed as an accountant, and was involved in an unsuccessful construction venture. Nevertheless, by the time of trial, Reid alone had reduced the couple's indebtedness to $6,000, and the house was unencumbered.

At trial, the parties stipulated that the 1967 net value of their residence, as encumbered by the mortgage, was $29,036, and that its 1979 value was $110,000. In addition, they stipulated as to the 1967 and 1979 values of stock held in Reid's name alone and of stock jointly held. Unlike the residence, the stock declined in value during the separation.

The trial court granted Reid's motion to value the community's assets and liabilities as of the date of separation in 1967. Dividing the community property, the court awarded Reid the jointly held stocks, valued as of 1967 at $30,727, and the residence with a 1967 net equity of $29,036. The court also credited Reid with payment of numerous community debts, and ordered him to pay one debt which remained outstanding. The court then ordered him to pay Nancy $15,115 to equalize the division of the community property. Among the property confirmed as Reid's separate property was the stock held in his name alone.

## The Valuation Date

The court's decision to value the assets and liabilities as of the date of separation means that Reid alone both benefits from the increased value of the residence and bears the loss in value of the stocks after that date. Nancy is content, of course, with the early valuation date for the stocks, but urges that the residence should have been valued as of the date of trial.

■ Generally community assets and liabilities must be valued "as near as practicable to the time of trial." (Civ. Code, § 4800, subd. (a); see *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 436 [119 Cal.Rptr. 590]; *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 110 [113 Cal.Rptr. 58].) However, Civil Code section 4800, subdivision (a), was amended in 1976 to provide that the court may, "*for good cause shown . . .* value all or any portion of the assets and liabilities at a date after separation and prior to trial *to accomplish an equal division* of the community property and the quasi-community property of the parties *in an equitable manner.*" (Italics added.)

"The amendment was designed to remedy certain inequities: one is the situation which results when either spouse dissipates the community estate after separation, and another is when the hard work and actions of one spouse *alone* and after separation, greatly increases the 'community' estate which then must be divided with the other spouse." (*In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 423 [149 Cal.Rptr. 616].)

The obstructive conduct of one of the parties may also justify a valuation date other than at the time of trial. In *In re Marriage of Stallcup* (1979) 97 Cal.App.3d 294 [158 Cal.Rptr. 679], the parties separated in 1972; trial was in 1977. Among community assets were certain businesses, which the trial court valued as of the date of separation. On appeal, husband urged that the trial court erred, because after the separation, he suffered business losses. However, husband had failed to provide timely evidence of his claimed losses, and had given inconsistent statements as to those losses, and the trial court found his testimony incredible. The 1972 date was set to facilitate accounting, and to eliminate the inference that husband's failure to provide evidence was calculated to conceal evidence unfavorable to him. Under those circumstances, the trial court's decision was for good cause and resulted in equitable division. (*Id.,* at p. 301.)

On the other hand, when an asset increases in value from nonpersonal factors such as inflation or market fluctuations, generally it is fair that both parties share in that increased value. (*In re Marriage of Walters* (1979) 91 Cal.App.3d 535, 539 [154 Cal.Rptr. 180].)

In *Walters*, the question was whether in bifurcated dissolution proceedings the community assets should be valued when the marriage was dissolved or when the assets were actually divided. Dissolution was

granted in 1975, and a house granted to wife as her separate property. She remained in the house and made mortgage payments. In 1977, however, the property provisions of the judgment of dissolution were vacated and trial held to divide the property. The court ordered the residence sold and the proceeds divided equally. The house had almost doubled in value, and wife urged that it be valued as of the date of dissolution, so that the increase in value would be hers alone.

Rejecting wife's argument, the court held that "time of trial" in section 4800, subdivision (a), means the proceeding in which the property is divided. While the court based its decision on the statutory language, it also explained why, under the circumstances, its decision was equitable. Wife would receive one-half of the increased value of the house, and had also had exclusive use of the home for the two years. Although half the property belonged to husband during those two years, he had enjoyed no benefit from it. Had there been evidence that the increase in value resulted from factors other than inflation or market fluctuation, the court commented, reimbursement to the wife might have been proper or fair. (*In re Marriage of Walters, supra,* 91 Cal.App.3d at p. 539.)

In this case, Reid argues that because he made mortgage payments and paid taxes and maintenance costs, and also paid the community's other debts after the separation, it would be unfair to permit Nancy to share in the increased value of the residence. We do not agree. Reid's argument is similar to that implicitly rejected as inequitable by the court in *Walters.* While Reid made mortgage payments, he also had exclusive use of the home for over 11 years. During those years, Nancy owned half of the residence but received no benefit from it. There is no evidence that the increase in value of the home resulted from anything other than inflation or market fluctuation. The fact that Reid paid numerous community debts in addition to the mortgage during that 11-year period is not sufficient good cause to justify valuing the residence as of 1967 and depriving Nancy of her share of its greatly increased value; on remand, Reid should be credited with those other payments when the court reconsiders the value of the community property.

Reid urges that valuation of the residence as of the date of trial would be unfair because during their separation, he believed that he and Nancy had agreed that the residence was his. Otherwise, he insists, he would not have continued to pay off their debts. However, the trial court expressly found the evidence did not support the existence of such

an agreement, and Reid cannot rely on its existence as support for the trial court's valuation order.

In its findings of fact, the trial court found the evidence sufficient "to have all community assets and community liabilities valued and allocated as of the alternate valuation date," i.e., the date of separation. The findings are silent, however, as to the specific evidence upon which the court relied. In·announcing its decision at the conclusion of trial the court merely declared, "I will, however, accept the December, 1967 valuation of all of the assets for a variety of reasons. For one thing, I do not think it would be appropriate or equitable to be selective in the asset, or assets, to be given the 1967 value, and so I think the fairest thing is to take that valuation for all of the assets." It is apparent from our reading of.the record that the reason for selection of the alternate date was the substantial length of time between the date of separation and the date of trial.

■ We perceive nothing in the fact of a lengthy separation, standing alone, that necessitates an alternate valuation date to accomplish the equal and equitable division of community property required by Civil Code section 4800, subdivision (a).[1] On the contrary, under such circumstances, when the value of community assets has been affected by inflation or other market factors, the fairest equal division of those as-

---

[1]See 2 Markey, Cal. Family Law Practice and Procedure (1981) Division of Property, section 24.40, pages 24-46 to 24-47: "Consequently, it would seem that 'good cause' as used in Civil Code Section 4800(a) would be any cause which would require valuation to be made at a different time than that specified in the statute in order for the court to make an equal division of the community property as required by that section. [¶] Facts which suggest themselves as probably sufficient to constitute good cause for valuing a community asset at a date after separation and prior to trial are as follows: [¶] (1) After separation the spouse having possession of the asset intentionally damaged it. [¶] (2) The property does not exist at the time of trial, having been intentionally lost or destroyed by the party having possession. [¶] (3) Intentional mismanagement of an income-producing asset resulted in substantial loss in its value or income between the date of separation and the date of trial. [¶] The above suggestions are not intended to imply, however, that nothing less than intentional loss or destruction of the asset will result in valuation of the asset prior to the time specified in the statute. Conceivably, loss or damage resulting from mere negligence or other cause may under the circumstances of a given case justify valuation as of a date other than the date of trial. [¶] Another situation requiring valuation at a date other than trial is where the asset (such as a business) has substantially increased in value after the parties separated due to the efforts of the party having possession. In this situation, the asset will be valued both as of the date of separation and as of the date of trial and the increase in value between the two dates apportioned between community and separate property." (Fn. omitted.)

sets lets the parties share equally in either gains or losses. (*In re Marriage of Walters, supra*, 91 Cal.App.3d at p. 539.) We ·conclude that the mere passage of time alone between the dates of separation and trial is an insufficient basis for setting the valuation date at a time other than "as near as practicable to the time of trial."[2]

█ Finally, it would be inconsistent and inequitable to give Nancy the benefit of the increased value of the house, but let Reid alone suffer the stock losses. There is no evidence that Reid mismanaged those stocks after the date of separation, and the court did not so find. To divide Nancy's and Reid's community property equally in an equitable or fair manner, all the assets of the community should be valued as of the date of trial.

### Rental Value of the House and Stock Dividends

█ Among the findings of fact is a finding that neither party was required to account to the other for the use of community assets after the date of separation, or to get credit for servicing community debts after that date, except that Reid was credited with paying approximately $24,510 in community debts. The explanation for that finding appears in the court's announcement of its intended decision, where the court speculated that the reasonable rental value of the house to Reid was probably balanced by mortgage payments and taxes which he paid, and that any stock dividend income which he received was probably offset by his interest payments on the several loans for which he paid, and that any stock dividend income which he received was probably offset by his interest payments on the several loans for which the stock was collateral. Nancy now complains that the court's finding was unsupported by any evidence.

We do not read the court's language in this regard as a finding that rental value was in fact offset by mortgage payments and taxes, or that dividend income was in fact offset by interest payments made by Reid. Instead, we read that language as a conclusion of law that Reid should

---

[2] At oral argument, Nancy relied on *In re Marriage of Hayden* (1981) 124 Cal.App. 3d 72 [177 Cal.Rptr. 183] to urge that the residence should be valued not as of the date of trial, but as of the date of remand after this appeal. We disagree. In *Hayden*, the court suggested that *on the facts of that case*, the conduct of the parties may have made it unfair to value certain property as of the date of trial. (*Id.*, at pp. 79-80.) We perceive nothing in the record in this case which would necessitate a similar result. *Hayden* does not stand for the broad proposition that after every appeal a reappraisal of community property must take place, and we decline to so hold in this case.

not be charged with rental value or dividend income, absent evidence of either. A conclusion of law does not lose its characteristic as such because placed among the findings of fact. (*Lenchner* v. *Chase* (1950) 98 Cal.App.2d 794, 802 [220 P.2d 921].) The evidence was undisputed that Reid made the house and stock loan payments; however, Nancy offered no evidence as to reasonable rental value or possible dividend income. Nor did she request any findings as to either.[3] Given the state of the evidence, the court's decision benefited rather than aggrieved Nancy, and her contention is without merit.

### The Separate Property Stock

■ Nancy also contends that the court erred when it found the stock purchased by Reid before their marriage to be his separate property; she contends the evidence is undisputed that there was an oral agreement transmuting that stock to community property. We disagree.

■ Generally all property of a spouse owned prior to marriage is separate property. One who asserts that property is community has the burden of proving it. (*Williams* v. *Williams* (1971) 14 Cal.App.3d 560, 564 [92 Cal.Rptr. 385].) ■ Nancy did testify that Reid once told her that he would have changed the stock held in his name to their joint names, but could not while the stock was being held as collateral. However, Nancy ignores Reid's testimony that he never had such a conversation with her. Similarly, while there was evidence that some of the stock held in Reid's name was listed as community property on loan agreements, Reid also testified that he described that stock as community only at the direction of a loan officer. In short, the evidence was conflicting, and the court evidently believed Reid, and found that there was no agreement. The evidence is sufficient to support that finding. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

■ Finally, Nancy's request for attorney's fees in connection with this appeal should be addressed to the trial court. (*In re Marriage of Pearce* (1978) 84 Cal.App.3d 221, 223 [148 Cal.Rptr. 509].)

---

[3]Nancy objected to the finding at issue only on the ground that it "lacked clarity." She proposed as a counterfinding: "Respondent [Reid] is not required to make an accounting for either the reasonable rental value of the home or the dividends and accretions to the stock. The expenditures made by Respondent on the principal and interest on the loans and taxes in all [likelihood] balance the reasonable rental value of the house."

*Cross-appeal*

■ Reid objects to the court's classification as community property of 20 shares of Xerox stock held in both parties' names and acquired after marriage. He concedes that the presumption of joint ownership created by the joint title can no longer be overcome by tracing, and that the party urging a separate interest must prove an agreement or understanding that the property was to remain separate. (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].) Because *Lucas* was decided after the trial in this case, Reid urges that remand is required to "try anew the issue of title to the Xerox, applying the proper rule of law." We disagree.

There was no evidence at trial of any agreement or understanding that Reid should retain a separate property interest in any of the stock which he purchased or otherwise acquired in the parties' joint names. Significantly, although Reid urges remand, he does not argue that any such evidence would or could be forthcoming on retrial. The stock was properly classified as community. (See *In re Marriage of Cademartori* (1981) 119 Cal.App.3d 970, 976 [174 Cal.Rptr. 292]; *In re Marriage of Gonzales* (1981) 116 Cal.App.3d 556, 564-565 [172 Cal.Rptr. 179].)

That portion of the judgment valuing the community property is reversed, and the matter remanded for reconsideration, with community assets valued as of the 1979 date of trial.

White, P. J., concurred.

**BARRY-DEAL, J.**—I concur in the judgment except for the valuation date on remand. I would value the community assets as of the time of actual reconsideration by the court to more properly reflect the present market conditions.

The petition of appellant Husband for a hearing by the Supreme Court was denied July 22, 1982.