[Civ. No. 68753. Second Dist., Div. Five. Aug. 24, 1984.]

In re the Marriage of SHIRLEY M. and ROBERT A. KOPPELMAN.
SHIRLEY M. KOPPELMAN, Appellant, v.
ROBERT A. KOPPELMAN, Appellant.

### Counsel

Robert E. Alderman, Jr., for Appellant Wife.

Trope & Trope, William B. Anderson and Lawrence E. Leone for Appellant Husband.

### Opinion

**FEINERMAN, P. J.**—Shirley and Robert Koppelman separated on September 30, 1974, following 20 years of marriage and the birth of five children, four of them minors at the time of separation.[1] Shirley Koppelman (wife) filed a petition for dissolution of marriage on that date, and Robert Koppelman (husband) filed a response on October 29, 1974. No further action was taken by either spouse until February 1980, when wife set the matter for trial and moved to value the family residence on Kansas Street in El Segundo as of the 1974 separation date. (Both parties agree the residence on Kansas Street is a community asset.) At no time in the course of the separation period was an order or agreement for child support or spousal support made or entered into by the parties.

Throughout the six-year separation period, wife lived in the family home with the minor children and worked as a nurse. Her gross annual earned income ranged from $10,881.87 to $19,384 during those years. She also received approximately $500 per year in interest income from funds which were her separate property. During those years, husband established a residence with another woman and shared living expenses with her. Husband was employed as an insurance agent by the Knights of Columbus, earning a gross annual income ranging from $47,183 to $69,957. In those six years he gave wife approximately $10,000 to be used for general expenses of running the household. He also gave her approximately $7,000 to forward to their daughter who was attending college. (By that time the daughter was no longer a minor.) The record further indicates that husband had paid some

---

[1] One child reached his 18th birthday approximately one month after the separation.

extraordinary community expenses, including a $400 plumbing bill and legal expenses incurred on behalf of a minor son.

For a substantial portion of his term of employment with the Knights of Columbus, husband acted as a general agent. In this capacity he received commissions on policies that other agents sold, and salaries were paid to those agents by the Knights of Columbus on husband's behalf. If the salaries exceeded the commissions earned by the subordinate agents, husband was debited for the overages. In addition, husband's commissions were amortized over a number of years. This meant that he received commissions, which admittedly were community property income, on policies which he sold before separation at the same time he received separate property income from commissions on policies sold after separation. Husband made no attempt to segregate the two types of income. He retained possession of the community property income and paid no interest to wife on this income.[2]

After separation, husband purchased real property on East 54th Street in Los Angeles. The trial court found that it was "impossible to determine what assets were used to purchase [this property] by reason of the commingling of separate and community assets by [husband]. The source of payments made on any mortgages on said property are [sic] equally obscure by reason of commingling."

The court granted wife's motion to value the Kansas Street residence as of the 1974 date of separation, thus giving wife all the benefit of the considerable appreciation in the value of the property which had taken place between 1974 and 1980. The court found the fair market value of the family residence was $60,000 on October 15, 1974, and $170,000 on December 24, 1980. During that period of time, the encumbrance secured by a deed of trust on the residence had been reduced from $12,600 to $9,200.

The court made the following conclusions of law relevant to this disposition: "2. The court cannot make a retroactive Order for child support. [¶] 3. Subsequent to January 1, 1975, the parties have been each trustees for the benefit of the other with regard to community property in their possession. [¶] 4. Prior to January 1, 1975, the respondent was trustee for the benefit of the petitioner with regard to community property coming into his possession. [¶] 5. As a matter of equity, the Court determines that the only way to reimburse the petitioner for respondent's breach of trust in failure to contribute reasonable support to the children of the parties and failure to account for and distribute community property income received at a time of

---

[2]It should be noted that the couple filed a joint income tax return throughout the separation period.

great need by the petitioner is to grant the petitioner's motion to value the family residence at the October 15, 1974, date and to fail to pay any pre-judgment interest on the community funds received by the respondent after separation and unaccounted for by the respondent to petitioner, the real property at 150 East 54th Street being affirmed as respondent's separate property even though it was his burden to show the source of down payment and subsequent payments." The court awarded the family residence to wife as her separate property, computing the value of its equity at the 1974 appraised figure of $47,400, and charged husband with the net receipt of $57,529.63 in community assets[3] derived from earnings, and assigned to him the sole responsibility for payment of a $5,000 community debt.[4]

Husband appeals from that part of the interlocutory judgment of dissolution of marriage which awarded the family residence on Kansas Street in El Segundo to wife at its value as of October 15, 1974, the approximate date of separation. He asserts that no good cause was shown to value the property at a date prior to trial.

### VALUATION OF THE FAMILY HOME

Civil Code section 4800, subdivision (a) directs the court to value community assets and liabilities "as near as practicable to the time of trial, except that, upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and prior to trial to accomplish an equal division of the community property and the quasi-community property of the parties in an equitable manner." ■ We are asked to determine whether the trial court's conclusions of law, supported by its findings of fact, justify its holding that good cause was shown to value the family residence as of the date of separation in order to divide the community property in an equitable manner.

This subject was discussed in *In re Marriage of Stallcup* (1979) 97 Cal.App.3d 294 [158 Cal.Rptr. 679]. There, the trial court's decision to value community property as of a date near separation was affirmed. Husband had answered wife's interrogatories regarding business transactions only after her motion to compel answers was granted. He had frustrated efforts by a court-appointed CPA to obtain tax returns and other papers and documents, and the court found he had wilfully refused discovery and dis-

---

[3]Husband received $67,851.62 in community property commissions paid after separation on business written prior to separation and paid community property obligations of $10,321.79.

[4]The community property awarded to each party was equalized by division of various items of personal property and by an order that husband pay wife $1,639.77.

obeyed court orders. The trial court noted inconsistencies in his testimony and in his bank loan applications and deposition statements regarding current assets and liabilities and concluded he was not a credible witness. The trial court valued the property at the earlier date to simplify the accounting and to eliminate the inference that the failure to provide discovery was calculated to conceal evidence unfavorable to husband. On appeal, the court found "both good cause and equitable division" under those circumstances, remarking that "Having failed to provide timely evidence of his claimed post-1973 business reverses, husband may not now benefit from the confusion thus created . . . ." (*Id.*, at p. 301.)

The trial court's decision to value the family residence as of the date of separation was reversed in *In re Marriage of Priddis* (1982) 132 Cal.App.3d 349 [183 Cal.Rptr. 37]. There, the wife had occupied an apartment and the husband had remained in the community home during a separation period that exceeded 11 years. Husband had paid all home expenses as well as numerous community debts, and the $13,000 home mortgage which had existed at the time of separation was paid off prior to the date of trial. The appellate court found no good cause existed to value the community property as of the separation date. Although husband had made the mortgage payments, he also had exclusive use of the home for over 11 years. During that period of time, wife owned half the residence but received no benefit from it. No evidence was presented that the increase in value of the home resulted from husband's efforts, rather than from an inflationary real estate market. Of particular interest here, the court stated: "The fact that Reid paid numerous community debts in addition to the mortgage during that 11-year period is not sufficient good cause to justify valuing the residence as of 1967 and depriving Nancy of her share of its greatly increased value; on remand, Reid should be credited with those other payments when the court reconsiders the value of the community property." (*Id.*, at p. 356.)[5]

In the case at bench, the trial court based its decision on the two grounds expressed in its fifth conclusion of law. The first of these was that wife

---

[5]Contrary to counsels' assertions, neither *In re Marriage of Walters* (1979) 91 Cal.App.3d 535 [154 Cal.Rptr. 180] nor *In re Marriage of Baragry* (1977) 73 Cal.App.3d 444 [140 Cal.Rptr. 779] provides guidance for us here. *Walters* established that, after a judgment obtained by default was partially set aside and the previously existing status of property was restored, the "time of trial" at which community property is customarily valued under Civil Code section 4800 is the time, subsequent to dissolution of the marriage, when an adjudication of property rights is actually made. *Baragry* held that a couple separated on the date husband filed a petition for dissolution, not at the time he moved out of the family home. Husband had cohabited with another woman after leaving home, but had continued to eat most of his meals at home, to maintain his mailing address and voter registration at the home, to pay all the household bills, and to bring his laundry home twice a month. Here, the date of separation is not contested. Neither opinion discussed the question presented by the instant case—when may a court properly find "good cause" to value property at a date prior to trial.

should be reimbursed for husband's "breach of trust in failure to contribute reasonable support to the children of the parties . . . ." Manifestly, this was an inappropriate ground for the court's decision.

■ Both parents have an equal responsibility to support their child "in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents" (Civ. Code, §§ 196, 242; *State of Florida* ex rel. *Dept. of Health and Rehabilitative Services* v. *Vernon* (1982) 138 Cal.App.3d 827 [188 Cal.Rptr. 322]), and the court has authority to order either or both parents to contribute to the support of children. (Civ. Code, § 4700, subd. (a).) However, "[a] parent is not bound to compensate the other parent, or a relative, for the voluntary support of his child, without an agreement for compensation . . . ." (Civ. Code, § 208.) ■ As the trial court found in finding six, "From the date of separation to the date of the interlocutory hearing no order or agreement for payment of child or spousal support was made or entered into by the parties."

It is well established that child support orders can be made only prospectively and not retroactively.[6] (Civ. Code, § 4700, subd. (a); *Parker* v. *Parker* (1928) 203 Cal. 787, 795 [266 P. 283]; *In re Marriage of Ford* (1972) 24 Cal.App.3d 62, 66 [100 Cal.Rptr. 817].) In her supplemental trial brief, wife asserted that according to applicable court guidelines, husband should have paid far more child support than he did. This may very well be true. However, the trial court cannot retroactively order that he do so. Wife had the right to establish the amount of husband's obligation by requesting child support pending trial after the couple separated. She did not do so. It would be a denial of due process of law to deprive husband of his share of the appreciation of an asset to satisfy an alleged moral obligation which he had no opportunity to dispute. Similarly, wife cannot ask that her alleged disparate contribution to the children's support be credited against husband's share of the community property. Such a disposition would also amount to a retroactive order for child support.

The second reason expressed by the trial court for its decision to value the home as of the date of separation relates to husband's retention of community funds derived from insurance commissions earned during the separation period and his purchase of real property during that period with commingled community and separate funds. The trial court made the following findings of fact relevant to those circumstances: "23. Respondent received

---

[6]However, an order of modification or revocation of child support may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or revoke. (Civ. Code, § 4700, subd. (a).)

community property commissions paid after separation on business written prior to separation in the total sum of Sixty-Seven Thousand Eight Hundred Fifty-One Dollars and Sixty-Two Cents ($67,851.62), and paid after separation community property obligations incurred prior to separation in the sum of Ten Thousand Three Hundred Twenty-One Dollars and Seventy-Nine Cents ($10,321.79), and that none of said community property assets were accounted for to the petitioner by the respondent nor paid to the petitioner by the respondent. . . . 27. The following are assets or obligations acquired by the parties subsequent to September 30, 1974, and/or given to one of the parties or designated as his or her sole and separate property: . . . d. real property at 150 East 54th Street, Los Angeles, California, purchased by the respondent; it being impossible to determine what assets were used to purchase same by reason of the commingling of separate and community assets by respondent. The source of payments made on any mortgages on said property are equally obscure by reason of commingling.''

Husband purchased the East 54th Street real property in 1977. This property was confirmed by the trial court as husband's separate property, and he alone benefited from any appreciation in value of this property and any income derived therefrom. (The record is silent as to the purchase price or value at time of trial of this real property. Moreover, at this point in time we do not know whether husband still retains any interest in the real property.)

It appears from the record that the major portion of the community income from commissions was received by husband during the earlier years of separation. Unfortunately, husband made no attempt to segregate the community funds or to keep adequate records accounting for his use of the community income he received each calendar year.[7] The source of payments by husband on the encumbrance on the 54th Street property also was not identified.

■ The spouse who controls community property assets occupies a position of trust which is not terminated as to assets remaining in his or her hands after separation. "It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement." (*Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 21 [193 P.2d 728]; Civ. Code, § 5103.) ■ When a trustee spouse has commingled separate and community funds and assets so that it is impossible to ascertain and identify each source, the commingled whole will be

---

[7]As previously indicated, husband was able to account for the *total* community property commissions received during the separation period ($67,851.62) and he was charged with this amount in the division of community property.

presumed to be community property. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 611 [122 Cal.Rptr. 79, 536 P.2d 479]; *See v. See* (1966) 64 Cal.2d 778, 783 [51 Cal.Rptr. 888, 415 P.2d 776]; *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 441-442 [181 Cal.Rptr. 910].) Here, if husband does not sustain his burden of establishing his separate interest in the 54th Street property, he must suffer the legal consequences of the property being treated as community property.

Because the trial court utilized an improper ground for its decision to value the family residence at a date prior to trial, we must remand this case for rehearing. This does not mean, however, that the trial court lacks authority to value the family residence at the date of separation if this proves to be the only way "to accomplish an equal division of the community property . . . of the parties in an equitable manner." Good cause to use the earlier valuation date, resulting in a benefit to the wife, was found by the court when a husband failed to provide evidence of his claimed recent business reverses (*In re Marriage of Stallcup, supra,* 97 Cal.App.3d 294) and by this court when a husband had made an effort to show diminished income from his medical practice during the time immediately preceding trial (*In re Marriage of Barnert* (1978) 85 Cal.App.3d 413 [149 Cal.Rptr. 616]).

In the case at bench it appears that a community interest existed in the 54th Street property which the trial court found to be husband's separate property. As a result of husband's commingling of separate and community funds, the trial court determined it was impossible to ascertain the extent of the community interest in the 54th Street property and utilized this fact as one of the reasons for pretrial valuation of the family residence on Kansas Street. On remand, husband will have the opportunity to provide the necessary information to trace his separate interest in the 54th Street property. If husband fails to establish his separate property interest by sufficient evidence, the presumption that the 54th Street property is community property will prevail. For the guidance of the trial court, we also note that if the evidence demonstrates that husband has wasted the 54th Street asset, mismanaged it, sold the property and is unable to properly account for the proceeds, or in some other way neglected his fiduciary duty to the community, the trial court can factor in these elements, if any, in determining whether there is good cause for pretrial valuation of the Kansas Street residence.[8]

---

[8]We find wife did not waive her interest in the 54th Street property at trial. Wife's counsel's comment to the court, "it may ease [husband's counsel's] mind just to establish this and the witness if she was claiming any interest in it in view of the Court's order which I think she would say no," was a reaction to the court order in favor of his client regarding the Kansas Street home. Moreover, in light of the garbled and ambiguous nature of the statement, it would be unfair to construe it as a knowing and intelligent waiver of a property right.

On remand, wife should have the opportunity, if she so desires, to assert that she contributed $8,000 of her separate property to purchase the Kansas Street family residence and is entitled to reimbursement pursuant to Civil Code section 4800.2. Wife testified at trial, in 1980, that an $8,000 inheritance received from her mother's estate was the source of the down payment on the home.

Civil Code section 4800.2 was enacted in 1983 and applies to "proceedings commenced before January 1, 1984, to the extent proceedings as to the division of the property are not yet final on January 1, 1984," and thus to this case. (See notes under §§ 4800.1, 4800.2; *In re Marriage of Neal* (1984) 153 Cal.App.3d 117 [200 Cal.Rptr. 341].) Civil Code section 4800.2 provides that "unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division."

### THE CROSS-APPEAL

In her cross-appeal, wife contends the trial court committed prejudicial error in rejecting her memorandum of costs incurred subsequent to trial and in granting husband's counsel $250 for attorney's fees in connection with this part of the proceedings. Since this case is remanded for further proceedings, the entire spectrum of attorney's fees and costs will have to be reexamined by the trial court.

The judgment is reversed and the matter remanded for further proceedings in accordance with the opinions expressed herein. Each side shall bear its own costs on appeal.

Ashby, J., and Hastings, J., concurred.