[No. B173276. Second Dist., Div. Seven. July 20, 2005.]

In re Marriage of MELANIE and RICHARD SHERMAN.
MELANIE SHERMAN, Appellant, v.
RICHARD SHERMAN, Respondent.

COUNSEL

Trope and Trope, Thomas Paine Dunlap and Sorrell Trope for Appellant.

Wasser, Cooperman & Carter, Dennis M. Wasser, John A. Foley and Michael Brourman for Respondent.

OPINION

**JOHNSON, J.**—Melanie Sherman appeals from a further judgment on reserved issues in a marital dissolution action. She contends the trial court incorrectly calculated the community property interest in a residence Richard Sherman purchased before the marriage because the court valued the residence as of the date of the parties' separation instead of the date of trial. She also contends the trial court erred in rejecting her claim for reimbursement to the community for support payments Richard made with community property funds to his former spouse and their children. We agree with Melanie's position on the first issue, but disagree with her as to the second. Accordingly, we affirm the judgment in part, reverse it in part and remand the matter to the trial court with directions.

## FACTS AND PROCEEDINGS BELOW

The Shermans married in July 1995 and separated in October 2001. They had two children together. During the marriage, the Shermans lived in a residence in Pacific Palisades which Richard had purchased in November 1993 for $1,226,599.50. The Shermans used $99,475 in community property funds to pay down the mortgage on the residence. In August 1998, Richard refinanced the residence and withdrew $495,403. He used $329,191 of these proceeds to make improvements to the property. When the parties separated, Melanie and the children moved out of this residence. The parties stipulated the fair market value of the residence was $3,500,000 at the time of separation and $3,950,000 at the time of trial.

Richard was married and divorced before and had children from the prior relationship. During his marriage to Melanie, Richard paid spousal support to his ex-wife in the amount of $688,804.42 and child support in the amount of $802,925.08. For the most part, he used his salary to make these support payments. Richard was the chief financial officer of the David Geffen Company. He earned about $1 million a year during the time he was married to Melanie.

In October 2001, Melanie filed for divorce. In April 2003, the trial court entered a judgment of dissolution as to status only and reserved jurisdiction over all other issues, including division of property. The matter went to trial in July 2003. The parties disputed the value of the community property interest in the residence. The parties also disputed the validity of Melanie's claim for reimbursement to the community from Richard's separate property for the support payments Richard made to his ex-wife and children. Richard asked the trial court to deny Melanie's claim for reimbursement, arguing he had no other source of income available to make the support payments aside from income deposited in community property accounts.

The trial court issued a statement of decision on the reserved issues. The court concluded the community was entitled to a pro tanto interest in Richard's separate property residence. In setting the value of this interest, the trial court stated: "The major component of the pro tanto community interest in the residence was from the August 1998 improvements. In such a situation, *Bono v. Clark*[1] . . . holds that the value of the property as of the date of separation, rather than as of the date of trial, should be utilized in order to determine the pro tanto community interest in the residence. In the within matter, the parties have stipulated that the community interest pursuant to a *Bono v. Clark* analysis would be $680,759." The trial court rejected Melanie's reimbursement claim, concluding it was barred by the applicable limitations period set forth in Family Code[2] section 920 because more than three years had elapsed since Melanie had actual knowledge Richard was using community funds to pay his spousal and child support obligations.

The trial court entered judgment in accordance with the above conclusions set forth in its statement of decision. The court ordered Richard to pay Melanie $15,000 a month in spousal support and $10,038 per month in child support.

## DISCUSSION

### I. THE TRIAL COURT ERRED IN VALUING THE COMMUNITY PROPERTY INTEREST IN THE RESIDENCE.

In *In re Marriage of Moore*, our Supreme Court concluded, "Where community funds are used to make [loan] payments on property purchased by one of the spouses before marriage 'the rule developed through decisions in California gives to the community a pro tanto community property interest in

---

[1] *Bono v. Clark* (2002) 103 Cal.App.4th 1409 [128 Cal.Rptr.2d 31].
[2] Statutory references are to the Family Code.

such property . . . .' "[3] Courts have applied this so-called *Moore/Marsden* rule not only where the parties use community funds to pay down a mortgage, but also where they use community funds to make improvements to a residence purchased by one of the parties before marriage and those improvements increase the property's equity value.[4]

The disputed issue in this case is not whether the community acquired an interest in the Pacific Palisades residence Richard purchased before the marriage. The parties agree it did by making mortgage payments and paying for improvements to the property. The issue here is whether the proper date of valuation of the community property interest in the residence is the date of the parties' separation or the date of trial. The trial court used the date of separation, which Richard argues is the appropriate date. Melanie claims the court erred in not using the date of trial. We agree with Melanie.

Section 2552, subdivision (a) provides: "For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except as provided in subdivision (b), *the court shall value the assets and liabilities as near as practicable to the time of trial*."[5] Subdivision (b) of this section states: "Upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and before trial to accomplish an equal division of the community estate of the parties in an equitable manner." The record does not indicate either Richard or the trial court gave much thought (if any at all) to section 2552 in connection with the valuation of the community property interest in the residence. Richard continues to ignore this statute on appeal despite Melanie's numerous references to it in her opening appellate brief.

■ Applying the principle set forth in section 2552, California appellate courts have concluded the proper valuation date for a community property residence for purposes of a dissolution proceeding is the date of trial unless there is some reason which renders this result inequitable.[6] A date of separation valuation of property is appropriate " 'when the hard work and

---

[3] *In re Marriage of Moore* (1980) 28 Cal.3d 366, 371–372 [168 Cal.Rptr. 662, 618 P.2d 208]; see *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 436–437 [181 Cal.Rptr. 910] (in applying the *Moore* formula, where residence is purchased before marriage, the separate property interest "should have the benefit of . . . appreciation in the value of the property before the marriage").

[4] See, e.g., *In re Marriage of Allen* (2002) 96 Cal.App.4th 497, 502 [116 Cal.Rptr.2d 887].

[5] Italics added.

[6] The following cases interpreted former Civil Code section 4800, subdivision (a), which is no different in any material respect from Family Code section 2552: *In re Marriage of Priddis* (1982) 132 Cal.App.3d 349, 354–358 [183 Cal.Rptr. 37]; *In re Marriage of Koppelman* (1984) 159 Cal.App.3d 627, 631–635 [205 Cal.Rptr. 629], disapproved on another ground in *In re*

actions of one spouse *alone* and after separation, greatly increases the "community" estate which then must be divided with the other spouse.' [Citation.]"[7] "On the other hand, when an asset increases in value from nonpersonal factors such as inflation or market fluctuations, generally it is fair that both parties share in that increased value."[8]

 We can think of no reason why this analysis would be inapplicable to a community property interest in a separate property residence like the one at issue here. There is nothing in the record to suggest the $450,000 increase in the value of the residence between the time of separation and trial had anything to do with Richard's efforts. Richard has not provided any reason why a date of trial valuation would be inequitable. The fact Richard made all of the mortgage payments after separation does not alter the analysis. He also received the exclusive benefit of continuing to live in the home.[9]

In *Bono v. Clark*[10]—the case the trial court relied on in the present matter—the Court of Appeal was tasked with deciding the proper formula for determining the community's pro tanto interest where a married couple used community funds to pay for improvements to real property the husband owned before the marriage. The court decided the date of the parties' separation, which was more than six years before the trial, was the proper valuation date. The court found it was "appropriate to depart from the *Moore/Marsden* approach" to valuation because the matter did not "involve[] the division of community property in [a] dissolution proceeding[]."[11] The husband had filed for divorce, but he passed away before the dissolution proceedings were completed. The wife filed the action at issue against her husband's estate. The Court of Appeal concluded section 2552 did not apply because the matter concerned the division of property in a civil proceeding, not a dissolution proceeding.[12] The court found "the relevant statute" to be section 771, which provides, "[t]he earnings and accumulations of a spouse . . . , while living separate and apart from the other spouse, are the separate property of the spouse."[13] The court concluded this provision "dictates crediting the separate property estate with postseparation appreciation."[14]

---

*Marriage of Fabian* (1986) 41 Cal.3d 440, 451, footnote 13 [224 Cal.Rptr. 333, 715 P.2d 253]; *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 760–761 [214 Cal.Rptr. 661].

[7] *In re Marriage of Priddis, supra*, 132 Cal.App.3d at page 355.

[8] *In re Marriage of Priddis, supra*, 132 Cal.App.3d at page 355.

[9] See *In re Marriage of Priddis, supra*, 132 Cal.App.3d at page 356.

[10] *Bono v. Clark, supra*, 103 Cal.App.4th 1409.

[11] *Bono v. Clark, supra*, 103 Cal.App.4th at pages 1426–1427.

[12] *Bono v. Clark, supra*, 103 Cal.App.4th at page 1427.

[13] Section 771, subdivision (a); see *Bono v. Clark, supra*, 103 Cal.App.4th at page 1427.

[14] *Bono v. Clark, supra*, 103 Cal.App.4th at page 1427.

Given the present matter is a dissolution proceeding, we would be hard-pressed to find section 2552 does not apply. Under this section, the trial court should have valued the residence as close to the date of trial as practicable in determining the community's pro tanto interest.[15] Nothing in the record indicates a date of trial valuation as opposed to a date of separation valuation would be inequitable in this case. To the contrary, we believe a date of separation valuation is inequitable because the $450,000 increase in the value of the residence between the date of separation and the date of trial was not the result of any efforts by Richard.

■ With respect to the *Bono* Court's reference to section 771, we do not believe this provision—stating "[t]he earnings and accumulations of a spouse . . . while living separate and apart from the other spouse, are the separate property of the spouse"—is incompatible with a date of trial valuation. As the Court of Appeal in *In re Marriage of Imperato* explained, in evaluating the community interest in a business the husband continued to operate on his own after the couple separated, to read this provision (which at the time was found at Civil Code section 5118) to mean a date of separation valuation date is proper would "overlook[] the inherent growth factor found in many assets, investment and re-investment of capital, market fluctuations, and numerous other components that can increase the value of most assets."[16] The community should share in the postseparation increase in value of an asset which is not attributable to the efforts of one spouse. In any event, we disagree with the *Bono* Court's characterization of an increase in the value of a residence—which was owned during the marriage and was partially community property—as the earnings or accumulations of one spouse while living separate and apart from the other spouse.

■ Melanie challenges the trial court's application of the formula set forth in *Bono* on another ground aside from the date of valuation. She contends the *Bono* formula "improperly shrinks the community's pro tanto interest" in a way the *Moore/Marsden* formula does not. The *Moore/Marsden* formula "credit[s] the husband's separate property estate with premarital appreciation, but it [does] not incorporate that premarital appreciation into its calculation of the respective separate and community percentage interests."[17] The *Bono* formula, on the other hand, adds the premarital appreciation to the

---

[15] Richard cites *In re Marriage of Branco* (1996) 47 Cal.App.4th 1621 [55 Cal. Rtpr. 2d 493], in which the Court of Appeal used the date of separation in valuing the community's interest in a residence the wife owned before marriage where the couple used a community property loan to pay off the wife's original mortgage on the home. The appellate court did not cite section 2552 or explain why it was using the date of separation. The date of valuation apparently was not a disputed issue in the case. Richard's reliance on *Branco* does not persuade us the date of separation is the appropriate valuation date in this case.

[16] *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 435–437 [119 Cal.Rptr. 590].

[17] *Bono v. Clark, supra,* 103 Cal.App.4th at page 1426.

separate property acquisition cost to determine a total separate property investment which is used to calculate the separate property percentage interest.[18] Richard does not address this issue in his appellate brief.

The *Bono* Court explained its departure from the *Moore/Marsden* formula in treating the premarital appreciation "as an element of the acquisition costs" as follows: "Here, . . . we are dealing with community-funded improvements that began long after decedent's initial acquisition of the property—and some undetermined time after the parties were married. We are not dealing with a separate property loan extant at the time of marriage being partly satisfied by community payments, as was the case in both *Moore* and *Marsden*."[19] John Bono purchased the property in 1960 and he did not marry Virginia Bono until 1977.[20]

We see no reason "to depart from the *Moore/Marsden* approach to appreciation" like the appellate court did in *Bono*.[21] Here, Richard purchased the residence in November 1993. He and Melanie married in July 1995. Apparently Richard was using his community property salary to make mortgage payments. Thus, the community immediately began acquiring an interest in the residence unlike the situation in *Bono*. Moreover, in the present matter, the community-funded improvements were made less than five years after Richard purchased the property as opposed to at least 17 years later (and potentially much more) in *Bono*.

Before trial in this matter, the parties stipulated the community interest in the Pacific Palisades residence using the *Moore/Marsden* formula "assuming a date of trial appraisal of $3,950,000 and assuming that $329,191 of the refinancing proceeds of $495,403 were used for improvements to the residence" is $936,230.[22] Unfortunately, we cannot resolve the matter simply by modifying the judgment to reflect this amount and affirming the judgment as modified. The trial court awarded the entire community property interest in the residence to Richard. Melanie asks this court to increase the amount of the equalization sum the trial court ordered Richard to pay her by $127,735.50 (half of $936,230 minus $680,759). We believe it is more appropriate to remand the matter to allow the trial court to determine the

---

[18] *Bono v. Clark, supra,* 103 Cal.App.4th at page 1426.

[19] *Bono v. Clark, supra,* 103 Cal.App.4th at page 1426.

[20] *Bono v. Clark, supra,* 103 Cal.App.4th at page 1415.

[21] *Bono v. Clark, supra,* 103 Cal.App.4th at page 1426.

[22] As set forth above, using the *Bono* formula, the community property interest in the residence would be $680,759.

proper means of compensating Melanie for her share of the additional community interest in the residence.[23]

## II. MELANIE HAS NOT ESTABLISHED THE COMMUNITY IS ENTITLED TO REIMBURSEMENT FOR THE SUPPORT PAYMENTS RICHARD MADE WITH COMMUNITY FUNDS.

Melanie claims the community is entitled to reimbursement under section 915 for the spousal and child support payments Richard made using his (community property) salary. She contends the trial court erred when it concluded her reimbursement claim is barred by the limitations period set forth in section 920.

Section 915, subdivision (b) provides: "If property in the community estate is applied to the satisfaction of a child or spousal support obligation of a married person that does not arise out of the marriage, at a time when nonexempt separate income[24] of the person is available but is not applied to the satisfaction of the obligation, the community estate is entitled to reimbursement from the person in the amount of the separate income, not exceeding the property in the community estate so applied." Under section 920, subdivision (c)(1), a "spouse in whose favor the right [of reimbursement] arises" must exercise that right within three years after he or she "has actual knowledge of the application of the property to the satisfaction of the debt."

As Melanie points out, the trial court found "during the marriage, [Richard] received $184,295 of nonexempt separate property income which was available to pay his child support and spousal support obligations to his former spouse, but which was not used for that purpose." But the trial court rejected Melanie's claim for reimbursement on the ground it is time-barred under section 920 because more than three years earlier she had actual knowledge Richard was using community property income to pay spousal and child support.

---

[23] Melanie contends, to the extent she prevails on any issue on appeal, this court should remand the matter for a reevaluation of her claim for fees and costs. The record reveals Melanie incurred about $100,000 in attorney fees and costs and Richard paid $73,000 of this amount. Melanie also incurred about $60,000 in forensic accounting fees of which amount Richard paid $18,525. The trial court found $40,000 was a reasonable amount of fees for the work the forensic accountants should have performed. The court did not order Richard to make any further contribution toward Melanie's fees and costs. Considering our review of the record and our decision on appeal, we do not believe there is any basis for ordering the trial court to make a further determination on Melanie's claim for fees and costs.

[24] We need not discuss the definition of "nonexempt separate income" because it is not necessary to our analysis.

Melanie claims Richard is obligated to reimburse the community $184,295 because he had that amount in nonexempt separate income at some point during the life of the marriage. Melanie does not treat each support payment as a separate obligation for purposes of her reimbursement claim. She does not demonstrate Richard actually had any nonexempt separate income available at the time he made any specific support payment using community funds.

When it comes to her analysis on the limitations period under section 920, however, Melanie does a complete about-face. She argues Richard's support obligation during the life of the marriage *cannot* be treated as one big debt. She asserts, "Each payment of child support and spousal support arising from a marriage other than that of the parties gives rise to a claim for reimbursement. . . . [¶] . . . '[T]he debt' in fact consisted of numerous debts, arising each month. 'The property' used to satisfy each support payment was not ascertainable until each monthly payment was actually made."

■ Melanie cannot have it both ways. If she wants to treat each support payment as a separate obligation (as she does in addressing the limitations issue), her reimbursement claim fails because she has not demonstrated Richard had any nonexempt separate income available at the time he made any particular support payment using community funds. She does not even attempt to make such a showing. We believe the correct interpretation of the statute, based on its plain language, requires a court to treat each support payment as a separate obligation or debt. To secure reimbursement under section 915, a party must show the other spouse had nonexempt separate income available *at the time* that spouse used community funds to make a particular support payment. A spouse has a right to use community funds to make a support payment if nonexempt separate income is not available to him or her to use for that purpose.

Based on the foregoing, we affirm the trial court's rejection of Melanie's reimbursement claim.

## DISPOSITION

The judgment is reversed to the extent it states the community property interest in the residence is $680,759. In all other respects the judgment is affirmed. The matter is remanded to the trial court with the following

directions: The trial court shall modify the judgment to reflect the community property interest in the residence is $936,230. The court shall conduct further proceedings to determine the manner in which Melanie Sherman will be compensated for her share of the additional community property interest in the residence. Each party is to bear her/his own costs on appeal.

Perluss, P. J., and Zelon, J., concurred.